HOSKINS, ADMR., APPELLEE, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT.

[Cite as Hoskins *v.* State Farm Mut. Auto. Ins. Co. (1986), 26 Ohio St. 3d 87.]

(No. 85-1975—Decided August 20, 1986.)

*Inscore, Rinehardt, Whitney, Enderle & DeWeese* and *James DeWeese,* for appellee.

*Sauter & Hohenberger* and *Wayne P. Hohenberger,* for appellant.

*Per Curiam.* At all times pertinent to this cause of action, R.C. 3937.181(B) required insurers to offer underinsured motorist coverage under two circumstances: (1) "* * * to each applicant for new automobile or motor vehicle liability insurance," and (2) "to each named insured

policyholder at the time of the first policy renewal after September 1, 1980, if underinsured motorist coverage is not in force or has not been previously offered." The parties agree that State Farm complied with the requirement for offering coverage at the first policy renewal after September 1, 1980. We must decide whether State Farm was also required to offer underinsured motorist coverage with the March 15 policy, thereby treating Hoskins as an "applicant for new automobile or motor vehicle liability insurance," when he paid the renewal amount. We answer this question in the negative.

R.C. 3937.181(B) required insurers to allow their insureds to accept or reject underinsured motorist coverage at the first opportunity. Such coverage was to be offered to each new applicant and also at the initial renewal if the insured did not have the coverage. An insurer was not required to re-offer the coverage after the insured had rejected these initial opportunities.

Hoskins had previously rejected State Farm's offer of underinsured motorist coverage. When he paid the amount due on his renewal notice, he did not submit a new application for insurance. State Farm simply reinstated Hoskins' coverage with the same limits. Under these circumstances, Hoskins was not an "applicant for new automobile or motor vehicle liability insurance" within the meaning of R.C. 3937.181. State Farm was not required to offer underinsured motorist coverage when it reinstated Hoskins' coverage on March 15. We therefore reverse the judgment of the court of appeals.

*Judgment reversed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs in judgment only.

CELEBREZZE, C.J., concurs in part and dissents in part.

SWEENEY and C. BROWN, JJ., dissent.

CELEBREZZE, C.J., concurring in part and dissenting in part. I find the analysis of the court of appeals and Justice Brown's discussion concerning the operation of former R.C. 3937.181(B) to be consistent with our exemplary decision in *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161 [51 O.O.2d 229].[1] However, for the reasons which follow, I believe a remand is appropriate in this instance.

---

[1] To add further confusion, three members of the majority concluded last year in *Benson* v. *Rosler* (1985), 19 Ohio St. 3d 41, that automobile insurance policy renewals, following conclusion of the first period of coverage, "* * * when written for specific [six-month] periods,

R.C. 3937.31 provides a mandatory two-year motor vehicle insurance policy renewal period. For a policy cancellation to be effective, R.C. 3937.32 requires the insurer to provide at least a ten-day written notice of cancellation where the reason for cancellation is nonpayment of a premium.

In considering coverage under a "lapsed" insurance policy which was to have been effective in 1978-1979, this court held in *DeBose* v. *Travelers Ins. Co.* (1983), 6 Ohio St. 3d 65, as follows:

"In order to terminate an automobile insurance policy for nonpayment of premiums and within the mandatory renewal period set forth in R.C. 3937.31, the issuer of the policy must send, pursuant to R.C. 3937.30 *et seq.*, a notice of cancellation to the policyholder. (*Morey* v. *Educator & Executive Insurers*, 45 Ohio St. 2d 196 [74 O.O.2d 305], overruled.)"

Based on the court's former holding contra in the 1976 *Morey* case, which was not overruled until 1983 in *DeBose*, it is conceivable that State Farm may not have sent the required notice of cancellation upon appellee's nonpayment. The record is silent on this point. If this actually happened, the old insurance policy would not have terminated. *DeBose*, at 67. See, also, 43 American Jurisprudence 2d (1982) 947, Insurance, Section 914.

Similarly, *if* the replacement policy contained in the record is the same as the original policy, the terms specifically provide, *inter alia*, that the insurer "may cancel this policy by written notice, mailed to *you*"; that "[t]he mailing of it shall be sufficient"; and that the notice will be mailed "at least: * * * 10 days before the cancellation date if the cancellation: (1) is because *you* did not pay the premium when due." (Emphasis *sic*.)

Again, it can not be determined from the record if this 1981 policy is the same as the older policy. However, if the contract terms are consistent, the insurer's failure to act (send ten-day notice) is essential and a policy forfeiture (cancellation) for mere nonpayment of the premium on the day named would not have occurred. *Mutual Life Ins. Co.* v. *French* (1876), 30 Ohio St. 240; 43 American Jurisprudence 2d (1982) 945, Insurance, Section 912. Even if the policies are not the same, the directing statutes, R.C. 3937.30 *et seq.*, would command the same result. *DeBose*.

Although the litigants agree that there was a gap in coverage because of nonpayment, resolution of such legal conclusions rests upon the court,

---

may be considered term policies rather than continuing policies." Hence, "* * * at the expiration of the six-month period with the company's subsequent acceptance of the premiums, there was a new contract of insurance coverage entered into by the parties." *Id.* at 44. Inconsistently, today's majority concludes that such a renewal does not constitute a new policy but rather is a continuation of the original policy.

uninfluenced by stipulations of the parties relative to the determination of such questions of law.[2]

Accordingly, *if* State Farm did not provide notice of cancellation as required by law, the policy would not have terminated, coverage would be continuous, and there would not have been a *new* policy issued in March 1981. This fact can not be determined from the record and therefore its absence precludes the granting of summary judgment favorable to appellee, absent an agreement or demonstration that State Farm did serve the mandatory notice of cancellation.

CLIFFORD F. BROWN, J., dissenting. Today the majority takes another whack at insurers' statutory obligation to offer underinsured motorist coverage with each application for automobile insurance coverage. I must dissent.

The parties agree that appellee Hoskins obtained an automobile insurance policy from appellant State Farm at some time prior to September 1, 1980. The parties have also agreed, for purposes of this appeal, that State Farm offered underinsured motorist coverage to Hoskins at the first policy renewal after September 1, 1980, as required by R.C. 3937.181(B), effective June 25, 1980, and that Hoskins rejected such coverage *at that time*. However, as the parties also agree, Hoskins' insurance policy lapsed, and he had *no coverage* from February 13, 1981 to March 15, 1981, when, in response to Hoskins' tender of payment, State Farm issued him a new policy with a new policy number.

Under then-effective R.C. 3937.181(B), as correctly quoted by the majority, if Hoskins was an "applicant for new * * * insurance" as to the policy issued by State Farm on March 15, 1981, then the clear terms of this statute required State Farm to affirmatively offer underinsured motorist coverage to Hoskins as to that new policy, and its failure to do so would result in coverage as a matter of law. See *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161 [51 O.O.2d 229].

The undisputed facts of this case compel the conclusion that Hoskins was such an applicant as to the March 1981 policy. The prior policy apparently did not provide any grace period during which a late payment could result in continuous coverage. Not only was the policy issued after a *total* lapse in coverage, but State Farm had absolutely no obligation to issue the policy simply because Hoskins had tendered such a late payment. The majority's observation that no formal application was required by

---

[2] In *Gittings* v. *Baker* (1853), 2 Ohio St. 21, we long ago recognized that although parties are free to stipulate "that certain facts exist" (*id.* at 23), they can not "require the court to give an effect to a written contract, other than its legal import" nor can they "require the court to draw other than the legal and natural conclusion from given premises" (*id.* at 24). See, also, 73 American Jurisprudence 2d (1974) 539, Stipulations, Section 5, and 50 Ohio Jurisprudence 2d (1961) 354, Stipulations, Section 6.

State Farm prior to issuance of the new policy is irrelevant. Rather, as the court of appeals below observed in its well-reasoned opinion, State Farm's own operations superintendent, Gordon Carlson, admitted by affidavit that "since Mr. Hoskins' *payment was received after the deadline for continuous coverage*, a *new policy* was issued for the policy period from March 15, 1981 * * *." (Emphasis added.)

In my view, the only reasonable conclusion on those facts, under the applicable statutory language, is that Hoskins was clearly an "applicant" as to the policy State Farm issued in March 1981, because absolutely no policy was in effect at the time of the premium payment tendered by Hoskins, such that the March 1981 policy could reasonably be considered a "renewal" of earlier coverage.

Accordingly, I dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.