DUSHAW ET AL., APPELLANTS, *v.* NATIONWIDE INSURANCE COMPANY ET AL., APPELLEES.

(No. 54704—Decided January 3, 1989.)

*John F. Norton,* for appellants.
*Timothy D. Johnson,* for appellees.

PATTON, J. Plaintiffs June F. Dushaw et al. appeal from an order of the Cuyahoga County Common Pleas Court that entered a summary judgment in favor of defendants Nationwide Insurance et al. on plaintiffs' claim for uninsured motorist coverage. The following facts give rise to this appeal.

In 1967, defendant Nationwide issued an automobile liability insurance policy to plaintiff June Dushaw, then known as June Iwaszkiw. The policy provided bodily injury liability coverage in the amount of $50,000 per person, $100,000 per occurrence. The policy was renewable every six months.

In 1976, pursuant to R.C. 3937.18, Nationwide offered Dushaw uninsured motorist coverage in an amount equal to the bodily injury liability limits contained in her policy. Plaintiff Dushaw expressly rejected Nationwide's offer of equal limits of uninsured motorist coverage and instead requested lesser coverage in the amount of $12,500 per person, $25,000 per occurrence. Thereafter, Dushaw renewed her policy every six months, but she did not request, and Nationwide did not re-offer, uninsured motorist coverage up to the limits of her liability coverage. In or around 1980, Nationwide offered Dushaw underinsured motorist coverage in accordance with former R.C. 3937.181.

On May 26, 1986, the plaintiffs were injured when the car in which they were riding was struck by an uninsured motorist. Nationwide paid the plaintiffs the maximum amount available under their uninsured motorist coverage, *i.e.,* $25,000.

On May 30, 1986, the plaintiffs commenced this action to determine the amount of uninsured motorist coverage available to them. Plaintiffs also sought damages for the alleged negligence of Nationwide's agent in failing to re-offer greater uninsured motorist coverage.

On October 9, 1987, the trial court rejected plaintiffs' claim that Nationwide was obliged to re-offer higher uninsured motorist coverage when it offered plaintiffs underinsured motorist coverage. Accordingly, the trial court entered summary judgment in favor of the defendants.

This appeal followed, and plaintiffs asserted the following proposition of law:

"Where an automobile insurance company fails to extend a statutorily mandated offer of uninsured motorist coverage in an amount equal to the policy holder's liability coverages, said coverage will be read into the insurance contract as a matter of law."

The issue presented is whether the defendant-insurer was required to re-offer uninsured motorist coverage equivalent to that provided under the plaintiffs' liability policy when the insurer offered underinsured motorist coverage pursuant to former R.C. 3937.181. We conclude that the trial court did not err in granting the defendants' motion for summary judgment, so we overrule the plaintiffs' proposition of law.

The Ohio Supreme Court has held that R.C. 3937.18 required automobile liability insurance policies to provide

equivalent uninsured motorist protection and, absent an express rejection, such coverage is provided to the insured by operation of law. See *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58, 8 O.O. 3d 70, 374 N.E. 2d 1258; *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 51 O.O. 2d 229, 258 N.E. 2d 429. See, also, *Poots* v. *Motorist Ins. Cos.* (1986), 38 Ohio App. 3d 48, 526 N.E. 2d 71.

In 1975, amendments to R.C. 3937.18 provided insureds with the option to obtain lesser amounts of uninsured motorist coverage. See Am. S.B. No. 25 (136 Ohio Laws, Part I, 57). As amended in 1975, R.C. 3937.18(A) provided:

"No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto, under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. The named insured shall have the right to reject such coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. Unless the named insured requests such coverage in writing, such

coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer."

In the instant case, the plaintiffs do not dispute that June Dushaw exercised her option to obtain a lesser amount of uninsured motorist coverage. On April 20, 1976, Dushaw expressly rejected uninsured motorist coverage equivalent to the limits under her bodily injury liability insurance. She explicitly requested lesser coverage in the amount of $12,500 per person and $25,000 per occurrence. Plaintiffs also do not dispute that when Dushaw subsequently renewed her policy at six-month intervals, she did not request that her uninsured motorist coverage limits be increased to match the limits of her bodily injury liability insurance.

The plaintiffs insist that when Nationwide offered Dushaw *underinsured* motorist coverage in or around 1980 or 1981 as mandated by then newly enacted R.C. 3937.181, Nationwide was also required to re-offer Dushaw uninsured motorist coverage in an amount equivalent to the limits of her bodily injury liability policy. The plaintiffs reason that since Nationwide was required to re-offer uninsured motorist coverage at the higher policy limits but did not do so, then such uninsured motorist coverage was provided by operation of law. We do not agree.

Former R.C. 3937.181, effective June 25, 1980, required insurers to offer underinsured motorist coverage if such coverage had not previously been offered. It provided in relevant part:

"(B) Each automobile liability or motor vehicle liability insurance company that provides uninsured motorist coverage under section 3937.18 of the Revised Code shall offer underinsured motorist coverage as optional protec-

tion, up to the limits of the uninsured motorist coverage, to each applicant for new automobile or motor vehicle liability insurance and to each named insured policyholder at the time of the first policy renewal after September 1, 1980, if underinsured motorist coverage is not in force or has not been previously offered.

"Each such insurance company shall provide information, prescribed by the superintendent of insurance, as to the type and cost of protection available under underinsured motorist coverage and permit such applicants and renewal policyholders to exercise the option to purchase such coverage. Insurance companies shall not be required to obtain or retain written rejections of such coverage." See Am. Sub. H.B. No. 22 (138 Ohio Laws, Part I, 1459-1460).

Am. Sub. H.B. 22 also amended R.C. 3937.18(A) to provide, in part:

"* * * The named insured shall have the right to reject such uninsured motorist coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. * * *" See 138 Ohio Laws, Part I, 1458.

In 1982, R.C. 3937.181 was repealed and was largely incorporated into an amendment of R.C. 3937.18. See Am. H.B. No. 489 (139 Ohio Laws, Part II, 2936-2938).

Despite plaintiffs' arguments to the contrary, nothing in the text of Am. Sub. H.B. No. 22 suggests that insurers such as Nationwide were required to re-offer uninsured motorist coverage at limits equivalent to the bodily injury liability coverage limits when Nationwide offered underinsured motorist coverage pursuant to former R.C. 3937.181. The bill merely required insurers to offer underinsured motorist coverage as optional protection up to the limits of the insured's uninsured motorist coverage if underinsured coverage was not then in force or had not been previously offered. This limited effect of Am. Sub. H.B. No. 22 and R.C. 3937.181 is supported by several appellate decisions.

In *Adams* v. *Motorists Mut. Ins. Co.* (Aug. 28, 1986), Franklin App. No. 85AP-1089, unreported, the insured claimed she was entitled to higher underinsured policy limits following the enactment of R.C. 3937.181. The court held that where the insured rejected the higher policy limits and accepted lesser policy limits of uninsured and underinsured motorist coverage prior to the enactment of R.C. 3937.181, the insurer was not required to re-offer such higher policy limits after the enactment of R.C. 3937.181. By renewing her original policy without requesting higher uninsured or underinsured policy limits, the insured effectively rejected the higher policy limits with each renewal. Thus, the enactment of R.C. 3937.181 did not require her insurer to again offer her uninsured/underinsured motorist coverage in the amount equal to her liability policy, and such coverage would not be implied by operation of law.

In *Johnson* v. *Great American Ins. Co.* (Feb. 24, 1988), Summit App. No. 13232, unreported, an insured with liability policy limits of $100,000 per person and $300,000 per accident elected in 1976 to reduce the maximum limits of uninsured motorist coverage to $12,500 per person, $25,000 per accident. In 1985, another insured was injured by a tortfeasor who had liability insurance in the amount of $12,500 per person, $25,000 per accident. The *Johnson* court held that the insureds were not entitled to underinsured motorist coverage equal to their liabili-

ty limits where the insureds rejected the higher limits for uninsured motorist coverage. The court concluded that R.C. 3937.181 only required the insurer to offer underinsured coverage up to the limits of the insureds' uninsured motorist coverage. R.C. 3937.181 did not require the insurer to offer higher underinsured coverage or to re-offer higher uninsured motorist coverage.

See, also, *Stone* v. *J.C. Penney Cas. Ins. Co.* (Mar. 24, 1988), Franklin App. No. 87AP-220, unreported (held: despite insurer's failure to offer underinsured motorist coverage pursuant to R.C. 3937.181, insurer was not required to re-offer uninsured/underinsured coverage following 1982 amendments to R.C. 3937.18 [Am. H.B. No. 489] where insured had previously rejected any uninsured motorist coverage).

In light of the foregoing, we conclude that the offer of underinsured motorist coverage as mandated by R.C. 3937.181 and Am. Sub. H.B. No. 22 did not require defendant Nationwide to re-offer plaintiffs uninsured motorist coverage with limits equivalent to their bodily injury liability coverage. The insurer complied with R.C. 3937.181 if it offered underinsured coverage up to the limits of its policyholder's uninsured motorist coverage. By renewing the policy without requesting uninsured coverage at the higher policy limits, the insured effectively rejected uninsured motorist coverage at the higher policy limits, and such coverage will not be implied by operation of law.

The plaintiffs rely on *Benson* v. *Rosler* (1985), 19 Ohio St. 3d 41, 19 OBR 35, 482 N.E. 2d 599, and maintain that that case supports their interpretation of R.C. 3937.181. We disagree. In *Benson,* the issue was whether anti-stacking provisions in an insurance policy that had been judicial-ly invalidated could later be given force and effect after such provisions were given legislative approval by former R.C. 3937.181(E). The *Benson* majority held that the renewal of the uninsured motorist policy operated to incorporate the legislative amendments into the insurance contract and, as a result, the anti-stacking provisions in the original policy could be enforced.

While *Benson* holds that the provisions of R.C. 3937.181(E) were incorporated into the uninsured/underinsured motorist policy upon its renewal, that holding does not support the plaintiffs' claims in this case. As previously noted, R.C. 3937.181(B) did not require Nationwide to re-offer uninsured motorist coverage at the higher bodily injury liability policy limits once the plaintiffs expressly rejected uninsured coverage at those higher limits. Consequently, the plaintiffs' renewal of their policy after the enactment of R.C. 3937.181(B) did not oblige Nationwide to re-offer uninsured coverage at the higher limits.

Plaintiffs' reliance on *Hoskins* v. *State Farm Mut. Auto. Ins. Co.* (1986), 26 Ohio St. 3d 87, 26 OBR 75, 497 N.E. 2d 87, is also unpersuasive. In *Hoskins,* the plurality held that the insurer was not required to re-offer underinsured motorist coverage pursuant to former R.C. 3937.181(B) where the insured originally rejected the insurer's offer of underinsured motorist coverage and the insured subsequently reinstated his lapsed policy. As we have stated, R.C. 3937.181 did not require the insurer to re-offer uninsured motorist coverage at higher policy limits.

Accordingly, we hold that R.C. 3937.181(B) did not require Nationwide to re-offer uninsured motorist coverage at the higher policy limits of the plaintiffs' liability policy. Since plaintiff Dushaw expressly rejected uninsured motorist coverage at those higher limits and accepted uninsured

coverage at the lesser policy limits, those lower policy limits establish the extent of Nationwide's coverage in this case. The trial court correctly entered summary judgment in favor of the defendants.

The judgment is affirmed.

*Judgment affirmed.*

J.V. CORRIGAN and DYKE, JJ., concur.