## Motok
## v.
## Motorists Mut.Ins. Co.
*[Cite as 2 AOA 629]*

*Case No. 88-T-4109*
*Trumbull County, (11th)*
*Decided March 30, 1990*

R.C. 3937.18

*Atty. Michael Walling, 269 Seneca Avenue, N.E. Warren, OH 44481, For Plaintiff-Appellant*

*Atty. W. Glenn Osborne, 306 Legal Arts Centre, Youngstown, OH 44503, For Defendant-Appellee.*

CHRISTLEY, P.J.

Appellant, Robert Motok was injured in a hit and run accident, while driving his motorcycle on June 24, 1983. Appellant's injuries were extensive and required extended hospitalization.

At the time of the accident, appellant was the owner and named insured of a policy of motorcycle insurance, issued by appellee, Motorists Mutual Insurance Company. This policy provided for bodily injury liability limits of $25,000 for any one person injured in an accident, with a total bodily injury liability limit of $50,000. Appellant's motorcycle insurance policy further provided uninsured motorist coverage limits of $12,500 for any one person injured in an accident, with total uninsured motorist coverage being limited to $25,000.

In addition to his motorcycle policy, appellant was also the owner and named insured for an automobile insurance policy, sold by appellee. This policy contained liability limits of $100,000 for any one person injured and $300,000 total liability coverage ($100,000/$300,000). The policy also contained uninsured motorist coverage limits, in the amount of $12,500/$25,000. There is some indication, in the record, that appellant fell behind in his payments on the automobile policy and that the policy had lapsed at the time of the accident. The trial court, however, found appellant to have been insured under the policy at the time of the accident.

At the time of the accident, appellant resided with his mother, Elizabeth Motok. Mrs. Motok was the owner of another automobile insurance policy, sold by appellee, which apparently provided coverage to family

members, residing at home as well. This policy contained liability limits of $100,000/$300,000.

At the time the policy was purchased, Mrs. Motok affirmatively rejected uninsured motorist coverage.

Shortly before the accident, Mrs. Motok's policy also lapsed, and, according to the record, she was uninsured from April 12, 1983 to May 9, 1983. On May 9, Mrs. Motok attempted to reinstate the insurance coverage, but appellee refused. Instead, it issued an entirely new policy to Mrs. Motok. This policy was in force at the time of the accident.

Pursuant to the insurance contract, appellant submitted his claim for benefits, apparently under all three policies, to an arbitration panel on July 29, 1986. The panel found that the injuries sustained by appellant were compensable and that his damages were $180,000. Appellee refused to pay this amount, stating that the motorcycle insurance policy limited their indebtedness to $12,500.

Further, appellee asserted that all three policies contained anti-stacking clauses which limited appellant's loss to the highest policy coverage available to him and which would prohibit appellant from receiving benefits under all three policies.

On October 8, 1986, appellant filed a declaratory judgment action as to all three policies against appellee, claiming that appellee was required to provide uninsured motorist coverage equivalent to the liability coverage provided as a matter of law, absent an express rejection or modification of coverage by appellant. This case was heard, in a trial before the bench, on May 2, 1988.

The trial court held that appellant had selected the lesser coverage on his motorcycle and automobile insurance policies, as permitted by R.C. 3937.18(C). The court further held that Mrs. Motok's policy was a reinstatement of a policy held by her for many years and one in which she had affirmatively directed the insurance company not to provide her with uninsured motorist coverage. The trial court therefore ruled that appellant was entitled solely to $12,500.

Appellant now appeals the trial court verdict with the following assignments of error:

"1. The trial court erred to the prejudice of plaintiff when it found that plaintiff had selected uninsured motorist coverage limits of $25,000/$50,000 (sic) on his motorcycle insurance policy.

"2. The trial court erred to the prejudice of plaintiff when it ruled that the policy which was issued to Elizabeth Motok by defendant on May 9, 1983 was a reinstatement of her previous policy, and that it, therefore, had no uninsured motorists coverage applicable to the accident of June 24, 1983.

"3. The trial court erred to the prejudice of the plaintiff when it found that plaintiff had selected uninsured motorist coverage limits of $12,500/$25,000 on his automobile insurance policy.

"4. The trial court erred to the prejudice of plaintiff when it ruled that his motorcycle policy, his personal auto policy, and Elizabeth Motok's auto policy had valid 'non-stacking' provisions which limited his recovery to the limits of the policy with the highest limits."

Appellant's first and third assignments of error consider substantially similar issues of law and will therfore be discussed concurrently.

In appellant's first and third assignments, he argues that the trial court erred in determining that he had selected uninsured motorist coverage limits of $12,500/$25,000 on his motorcycle and automobile insurance policies. Appellant states that this finding, by the trial court, contravenes R.C. 3937.18 and is therefore contrary to law.

R.C. 3937.18 (mandatory offering of uninsured and underinsured motorist coverage) is a frequently amended statue. The version of this statute in force at the time of this accident reads, in pertinent part, as follows:

"(A) No automobile liability or motor vehicle policy of insurance insuring against loss resulting from liability imposed by law for bodily injury *** suffered by any person arising out of the *** use of a motor vehicle shall be delivered or issued for delivery in this state *** unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage *equivalent* to the automobile liability or motor vehicle liability coverage ***.

"***

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent ***. If the named insured has selected uninsured motorist coverage in connection with a policy *previously issued to him* by the same insurer, such coverage offered

under division (A) of this section need not be provided in excess of the limits of the liability previously issued for uninsured motorist coverage, unless the named insured requests in writing higher limits of liability for such coverages." (Emphasis added.)

Examining R.C. 3937.18, as it existed in 1983, persuades this court that the relevant statutory provisions of the 1983 version of the statute are equivalent to those in existence prior to the 1982 amendment of the statute.

Under appellant's characterization of R.C. 3937.18, an insurer would be bound, by law, to provide an equal amount of uninsured motorist insurance to that provided for liability coverage, unless the insured affirmatively waived the uninsured motorist coverage or affirmatively chose to carry a lesser amount of uninsured motorist insurance.

Appellant's characterization has engendered considerable support, not only from the face of the statute itself, but also in the applicable case law on the subject. "[T]he only way in which the coverage can be eliminated from the insurance contract is by the overt refusal of the insured to accept it (and) unless the insured expressly rejects such protection, the uninsured motorist coverage is provided for him by operation of law." *Abate* v. *Pioneer Mutual Cas. Co.* (1970), 22 Ohio St. 2d 161, 163; *Grange Mut. Cas. Co.* v. *Volkman* (1978), 54 Ohio St. 2d 58; and *Diehl* v. *Motorists Mut. Ins. Co.* (June 26, 1987), Trumbull App. No. 3690, unreported.

Appellant further argues that the record contains no indication that he either affirmatively rejected uninsured motorist coverage or overtly selected a lesser amount of coverage and, as a result, the trial court's decision was in error.

Appellee attempts to distinguish the line of cases under *Abate, supra,* from the case *sub judice* by commenting that *Abate* and its brethren solely construe cases in which the issue was whether the insured had rejected any coverage, rather than a question of *how much* unisured coverage. This distinction is correct, but irrelevant. Examination of the statute indicates that the insured must exercise the same volitional activity in electing to carry *less* unisured motorist coverage as he would in the absolute rejection of coverage. Consequently, the precedent contained in the *Abate* line of cases is equally applicable to the case at bar.

Appellant further directs this court's attention to *Poots* v. *Motorists Ins. Co.* (1986), 38 Ohio App. 3d 48. *Poots, supra,* raises two important points.

"A written application for automobile liability and uninsured motorist coverage in unequal amounts is not, in and of itself, an express rejection of equal coverage [and] the insurer has the burden of proving that the customer rejected uninsured motorist coverage in an amount equivalent to his liability coverage." *Poots,* at the second and third paragraphs of the syllabus.

The record indicates that appellee, in its attemps to satisfy this burden of proof, adduced the applications for insurance submitted by appellant when applying for the first two policies in question. Appellee presented no other evidence of appellant's intent in regards to either appellant's motorcycle or automobile policy. As the *Poots* court noted,

"[The insurance company] argues that a written application for coverage in unequal amounts is, in and of itself, an express rejection of equal coverage. This logic is strained. At best it could be an implied rejection, but certainly not an express rejection." *Poots,* at 49.

Consequently, reliance solely upon the written application by the appellee to carry the burden of proof is insufficient.

This court is cognizant of the fact that to require an insurer to explain every minute aspect of an insurance policy as a prerequisite to a finding of the policies applicability would be unduly burdensome. *Dairyland Ins. Co.* v. *Finch* (1987), 32 Ohio St. 3d 360.

However, by law an insurance company must provide uninsured motorist coverage in an amount equivalent to the liability coverage, *unless* the insured makes a conscious, volitional decision to reject or modify such coverage. It is apparent to this court that the legislature has mandated that equivalent coverage be imposed unless the potential insured expressly and overtly chose not to accept the policy coverage offered.

Consequently, this court finds that the trial court was in error in finding that the appellant selected a lesser amount of uninsured motorist coverage as a matter of law. Therefore, appellant's first and third assignments of error have merit.

Appellant's second assignment of error challenges the trial court ruling which stated that the automobile policy, owned by Mr. Motok at the time of the accident, was a reinstatement of an earlier policy in which Mrs. Motok (and her husband) affirmatively rejected uninsured

motorist coverage through a written memorandum. Instead, appellant urges that the policy in question be found to be a new policy issued by appellee and which would not be subject to the earlier express revocation of uninsured motorist coverage.

The trial court premised its decision upon the case of *Hoskins* v. *State Farm Mut. Auto. Ins. Co.* (1986), 26 Ohio St. 3d 87. In *Hoskins, supra,* the insured was the owner of an automobile insurance policy provided by the appellant-insurer, State Farm. The appellee-insured expressly rejected uninsured motorist coverage at the time the policy was purchased. Subsequently, the appellee-insured failed to timely pay his premiums and the coverage lapsed. Eventually, the appellee-insured's coverage was reinstated, with a new policy number. He was not required to submit a new application for coverage. Shortly thereafter, the appellee-insured was killed by an uninsured motorist.

The Ohio Supreme Court held that the second policy provided by the appellant-insurer was simply a reinstatement of the previous policy, even though the subsequent policy was issued with a different policy number. Consequently, the appellee-insured could not be considered "an applicant for new automobile or motor vehicle liability insurance" as the terms were used in R.C. 3937.18(A). Therefore, the court held that the original rejection of coverage still applied and the appellee-insured was found to be without uninsured motorist coverage.

Appellant argues that *Hoskins* is factually distinguishable from the case *sub judice* and cites *Morey* v. *E & E Insurers* (1976), 45 Ohio St. 2d 196, for the proposition that where reinstatement was at the insurer's option and the policy is cancelled by the insurer, a reinstatement of the policy creates a new contract of insurence beween the parties. As appellee notes, however, *Morey, supra,* has been subsequently overruled by the Ohio Supreme Court in *DeBose* v. *Travelers Ins. Co.* (1983), 6 Ohio St. 3d, 65, 68.

This court agrees with the trial court's application of *Hoskins.* As a result, we find appellant's second assignment to be without merit.

Appellant's final assignment of error contends that the trial court erred in ruling that the anti-stacking provisions of appellant's various insurance policies were applicable and limited his recovery to the limits of the policy with the highest limits.

Appellant concedes that "the unambigous language of former R.C. 3937.18(E) permits insurance carriers to include provisions *** which preclude stacking of uninsured motorist coverage." *Karabin* v. *State Auto. Ins.* (1984), 10 Ohio St. 3d 163, at first paragraph of the syllabus; *Saccucci* v. *State Farm Mut. Auto. Ins. Co.* (1987), 32 Ohio St. 3d 273. However, appellant also notes that the validity of the anti-stacking provisions depends on whether the language of the provisions is clear, conspicuous, and unambiguous. *Karabin, supra; Saccucci, supra.* Appellant argues that the placement of the anti-stacking provisions away from the uninsured motorists provision rendered the anti-stacking clause unclear and ambiguous.

Appellant's argument is without merit. Appellant is not arguing that the language of the anti-stacking clause is ambiguous; rather, he is arguing that the appellee did not put the clause where appellant would be likely to read it. This argument is incorrect as a matter of contract law. Appellant cannot avoid the impact of the anti-stacking clause simply because it was on one of the pages that he failed to read. Moreover, examination of the clauses in question indicates that while they, like analogous sections in *Karbin* and *Saccucci*, are technical in nature, they are not so ambiguous as to be inapplicable as a matter of law.

Appellant's final assignment is without merit.

Appellant is entitled to receive payments from appellee equal to the highest level of coverage provided between his motorcycle and automobile insurance policies. The greatest amount of coverage is provided in appellant's automobile insurance policy and specifies a $100,000 single person recovery for injury liability. By law, this includes uninsured motorist coverage as well. Therefore, appellant is entitled to the payment of $100,000, less the $12,500 he has already received from appellee.

The judgment of the trial court is reversed and remanded back to the trial court for the entry of judgment in favor of appellant in accordance with this opinion.

*Judgment reversed,*
*and cause remanded.*

MAHONEY, J.,
DONOFRIO, J., Seventh Appellate District, sitting by assignment, Concur.