This is an appeal from the Athens County Common Pleas Court, which granted summary judgment in favor of appellee State Farm Mutual Automobile Insurance Company ("State Farm"). Appellants assign the following errors:
 1. "The Trial Court Erred in Granting Defendant-Appellee's Motion For Summary Judgment and Overruling Plaintiffs-Appellants' Motion For Summary Judgment."
 2. "Alternatively, the Trial Court erred in ruling Ohio Revised Code § 3937.44 is not in violation of Article I, Section 16 of the OAO [sic] Constitution, the "Right to a Remedy" provision."
The parties have stipulated to the facts pertinent to this appeal. On June 17, 1995, Kevin Francis was operating a motorcycle on which his wife, Christy Francis, was a passenger. Mr. Francis' motorcycle collided with a pickup truck driven by Deborah McClandish. The collision killed Kevin Francis and severely injured Christy Francis. McClandish's negligence was the proximate cause of the accident. At the time of the accident, Christy and Kevin Francis were the parents of two minor children, Sherry and Shelly Francis.
On January 5, 1996, appellants filed suit in the Athens County Court of Common Pleas for damages resulting from the accident. Appellants sought damages for the wrongful death of Kevin Francis, personal injury to Christy Francis, and loss of parental consortium to the Francis children arising out of the injuries to their mother. Appellants later amended their complaint to add a claim for declaratory relief, naming State Farm as the defendant. Appellants' action against State Farm sought a determination that Sherry and Shelly Francis' claims for loss of parental consortium were entitled to separate per person coverage under the general liability provisions of the insurance policy issued by State Farm to McClandish.
At the time of the accident, State Farm's policy provided liability coverage at limits of $100,000 per person and $300,000 per accident. The policy period began on January 10, 1995 and ended on August 30, 1995. The policy also had a "Guarantee Period" from August 30, 1994 to August 30, 1996. The policy provided that State Farm would renew McClandish's liability, medical, and uninsured motorist coverages "for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period * * *."
On September 5, 1997, appellants and State Farm filed a stipulation that limited the issues to be resolved by the trial court. The only remaining issue between appellants and State Farm became the declaratory relief claim involving the Francis children's cause of action for loss of parental consortium.
Following the stipulation, appellants moved for summary judgment pursuant to Civ.R. 56(C). Appellants argued that, as a matter of law, State Farm's policy with McClandish provided a separate per person policy limit of $100,000 covering the children's claims. According to appellants, the Ohio Supreme Court's holding in Schaefer v. Allstate Ins. Co. (1996),76 Ohio St.3d 553 mandated this conclusion. State Farm countered that the policy limited all claims resulting from any one person's bodily injuries to a single per person limit of coverage. Thus, the children had no claim to additional payment because appellee had already paid Christy Francis the per person policy limit for her injuries, e.g., $100,000. Appellee argued that R.C. 3937.44 expressly declares this policy provision to be enforceable.[1] The trial court denied appellants' motion for summary judgment, holding that the policy language and R.C. 3937.44 limited the children's loss of consortium claims to the per person limit applicable to the injured person.[2]
On the basis of the trial court's denial of appellants' motion, State Farm filed its own motion for summary judgment. In response, appellants again argued that R.C. 3937.44 was inapplicable to limit the children's loss of consortium claims to the injured person's per person policy limits. Appellants also argued that R.C. 3937.44 was unconstitutional on the basis that it violated the "Right to a Remedy" provision contained in Section 16, Article I of the Ohio Constitution. The trial court granted summary judgment to State Farm, and in doing so, relied upon the policy language and R.C. 3937.44.
Appellants filed a timely notice of appeal.
 I.
In their first assignment of error, appellants argue that the trial court erroneously granted summary judgment for appellee and that they, not appellee, were entitled to judgment as a matter of law.
In reviewing a trial court's grant of summary judgment, we must review the judgment independently and without deference to the trial court's determination. Evans v. S. Ohio Med. Ctr.
(1995), 103 Ohio App.3d 250, 253. Summary judgment under Civ.R. 56(C) is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party. Id. Therefore, we will uphold a summary judgment grant when, construing the evidence in the most favorable light available to the nonmoving party, the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hallv. Fairmont Homes, Inc. (1995), 105 Ohio App.3d 424, 431. In this case, the parties have stipulated to the material facts pertinent to this appeal.
 A.
Appellants advance two arguments in support of their first assignment of error. First, appellants contend that the trial court erroneously ruled that the insurance policy and R.C.3937.44 limited the children's loss of parental consortium claims to the single per person policy limit of their injured mother. Appellants argue that the children's claims for loss of consortium are separate and distinct claims that should be entitled to separate "each person" coverage under the terms of appellee's insurance policy. Appellants cite Schaefer v.Allstate Ins. Co., supra, and Molek v. State Farm AutomobileIns. Co. (1997), 77 Ohio St.3d 392 in support of this argument. Although appellants cite Molek in support of its argument, we note that the Supreme Court summarily decided that case on the authority of Schaefer. See Molek, 77 Ohio St.3d at 392. Thus, we will limit our discussion to the Supreme Court's analysis in Schaefer.
Appellants maintain that Ohio law recognizes the children's claims as "independent" of, rather than derivative from the underlying bodily injury. Therefore, they are entitled to separate claim coverage under appellee's insurance policy. Appellants also argue that, in any case, the insurance policy language cannot be reasonably construed to limit the children's loss of consortium claims to their mother's per person policy limit. They contend that a reasonable construction of the policy language dictates that a loss of consortium claim is subject to its own each person $100,000 limit since to conclude otherwise would relegate loss of consortium claims to mere derivative, rather than independent, causes of action.
State Farm argues that the policy's terms limit the children's claims to their mother's per person limit of liability and do not entitle them to their own per person limit. State Farm relies upon R.C. 3937.44 for the express authority to limit the loss of consortium claims to the per person liability limits of the injured person. Appellee counters Schaefer and Molek by arguing that R.C. 3937.44
supersedes the application of those cases as the law of Ohio.
We look first to the terms of the contract. "The construction of written contracts and instruments of conveyance is a matter of law." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo."Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686; Ohio Bell Tel. Co. v.Pub. Util. Com. (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286,287.
The "Limits of Liability" section of appellee's insurance policy provides:
 The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability — Coverage A — Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages, including damages for care and loss of services, arising out of and due to bodily injury to one person.
The trial court interpreted this policy language in conjunction with R.C. 3937.44 to conclude that the policy validly limited loss of consortium claims to the single per person policy limit applicable to Christy Francis. Thus, the children were not entitled to their own per person limit. We agree with the trial court's interpretation. The policy expressly provides that the "each person" limitation applies to all claims "arising out of bodily injury to one person." (Emphasis added.) The children's loss of consortium claims in this case are based upon bodily injury to their mother. Even though a child's claim for loss of consortium is a legally separate and independent claim under Ohio law, it is also a "derivative" cause of action in the sense that it is dependent upon a tort having been committed upon the child's parent.Schaefer, supra, 76 Ohio St.3d at 557; see, also, Gallimore v.Children's Hosp. Med. Ctr. (1993), 67 Ohio St.3d 244, 251
(describing loss of consortium as a "derivative action against a third-party tortfeasor"). Put another way, a child's loss of consortium claim is necessarily one "arising out of bodily injury" to a parent. Thus, the Francis children's loss of consortium claims are accurately described as "arising out of bodily injury to one person," i.e., their injured mother. The policy language unambiguously limits such claims to a single per person limit. Absent any controlling law to render such a provision invalid, the trial court correctly interpreted the policy as limiting the children's claims to a single per person limit of liability. Appellants also argue that construing the policy language to limit the children's claims to a single per person limit of liability invalidates the "independent" status of loss of consortium claims. This argument, however, blurs the distinction between liability for an independent cause of action and the entirely different question of who will pay the damages for that cause of action. Absent any insurance policy whatsoever, the children could maintain an action for loss of parental consortium. The insurance policy merely dictates whether the insurance company pays the damages for that cause of action or not. See Bernard v. Cordle (1996), 116 Ohio App.3d 116,120.
Having construed the policy as limiting the loss of consortium claims to a single per person limit, we must examine whether such a provision is valid and enforceable under Ohio law. In Schaefer, supra, the Supreme Court addressed the issue in the related context of uninsured motorist claims. Schaefer
dealt with an automobile accident that took place on November 11, 1985 involving Mr. Schaefer, Mrs. Schaefer, and an uninsured motorist. The Schaefers carried an uninsured motorist policy with liability limits of $100,000 per person and $300,000 per accident. Mr. Schaefer asserted a cause of action for loss of consortium arising out of his wife's injuries. The "Limits of Liability" section of Schaefer's uninsured motorist policy, however, provided that the per person limit was the "total limit of all damages arising out of bodily injury to oneperson in any one motor vehicle accident." Schaefer, 76 Ohio St. 3
d at 555 (emphasis sic.) At trial, the jury awarded $100,000 to Mrs. Schaefer for her personal injuries and $100,000 to Mr. Schaefer for his loss of consortium claim. The court of appeals reversed, however, on the basis that Mrs. Schaefer's claim for personal injuries and Mr. Schaefer's claim for loss of consortium were subject to a single $100,000 per person limit.
The Supreme Court reversed the court of appeals and reinstated the jury verdict, allowing Mr. Schaefer to recover under the terms of the insurance policy. The court noted that, as a matter of contract language, the insurance policy "clearly state[d] that Mr. Schaefer's claim for loss of consortium, arising from the bodily injuries sustained by his spouse, shares her single per person limit * * *." Id. Thus, if the language of the policy controlled, the loss of consortium claim was limited to the single per person limit applicable to Mrs. Schaefer's bodily injury claim. The Supreme Court had previously allowed policy language limiting insurance liability claims in this manner in Dues v. Hodge (1988), 36 Ohio St.3d 46
and Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11. Dues held that "[a]n insurance policy provision that limits recovery for all causes of action arising out of bodily injury to one person to a single limit of liability is a valid restriction of uninsured motorist coverage." Dues, 36 Ohio St.3d at paragraph two of the syllabus. Similarly, Tomlinson stood for the proposition that an insurer, by way of appropriate policy language, may limit all claims arising out of a single bodily injury to the single per person limit of coverage applicable to the injured person. Tomlinson, 44 Ohio St.3d at paragraph one of the syllabus. In allowing Mr. Schaefer to collect under a separate per person policy limit, the court expressly overruledDues and Tomlinson.
The Supreme Court's pronouncement in Schaefer represented an extension of its holding in Savoie v. Grange Mut. Ins. Co.
(1993), 67 Ohio St.3d 500. In Savoie, the court held that beneficiaries in a wrongful death action were entitled to separate per person limits of coverage under an uninsured motorist policy, declaring unenforceable any contract language limiting wrongful death claims to a single per person limit of coverage. Savoie, 67 Ohio St.3d at paragraph one of the syllabus. Schaefer extended the Savoie holding to loss of consortium claims, finding no valid reason to distinguish between statutory wrongful death actions and common law loss of consortium claims in personal injury cases. Schaefer, 76 Ohio St. 3
d at 557-58. Accordingly, the Supreme Court held that policy language limiting loss of consortium claims to a single per person limitation were unenforceable. Id. at syllabus.
Here, appellants argue that under Schaefer, the policy cannot limit the Francis children's loss of consortium claims to a single per person liability limit. If Schaefer is the controlling law, we agree. However, in analyzing the applicable law, we cannot view Schaefer in a judicial vacuum. Standing alone, Schaefer would be binding upon this court as the controlling law as declared by the Supreme Court of Ohio. Smithv. Klein (1983), 6 Ohio St.3d 16, 18. However, we are only bound to Supreme Court precedent for the points of law "decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Love v. Motorists Mut. Ins.Co. (1993), 86 Ohio App.3d 394, 400. With these principles in mind, we conclude that Schaefer is not the controlling law and decline to apply it.[3]
 Schaefer extended the holding of Savoie to the loss of consortium context. The much celebrated and oft-criticized holding in Savoie prompted the Ohio General Assembly to enact Amended Substitute Senate Bill No. 20 ("S.B. 20"), which became effective on October 20, 1994. S.B. 20 included the enactment of R.C. 3937.44, which expressly declared policy provisions that treat all claims arising out of one person's bodily injury as a single claim to be enforceable. R.C. 3937.44; see, also,Hillyer v. Great Am. Ins. Co. (Sept. 26, 1997), Lake App. No. 96-L-148, unreported, discretionary appeal allowed (1998),81 Ohio St.3d 1419. The legislature made clear in the text of S.B. 20 that its intention was to supersede the Supreme Court's holding in Savoie:
 Section 10. It is the intent of the General Assembly in enacting division (H) of section 3937.18 of the Revised Code to supersede the effect of the holding of the Ohio Supreme Court in its October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co. * * * that declared unenforceable a policy limit that provided that all claims for damages resulting from bodily injury * * * sustained by any one person in any one automobile accident would be consolidated under the limit of the policy applicable to bodily injury * * * sustained by one person, and to declare such policy provisions enforceable.
Thus, by enacting S.B. 20, the Ohio General Assembly replacedSavoie as the law of this state as of October 20, 1994. This legislative superseding of Savoie also has an impact on the viability of Schaefer, considering that Schaefer represented an extension of Savoie's holding to loss of consortium claims. The Supreme Court, however, did not have to consider the impact of S.B. 20 when it decided Schaefer because that case involved a lawsuit and accident taking place in 1985, prior to S.B. 20's effective date. Indeed, the majority opinion makes no mention of S.B. 20 having an impact on that case, while a dissenting opinion suggested that S.B. 20, although not applicable, should have provided guidance as to how the Court should have decided the case. Schaefer, 76 Ohio St.3d at 561 (noting that S.B. 20 was "not in effect at the time of the accident or at the time this case was filed") (Hildebrandt, J., dissenting). Schaefer,
then, represents the pronouncement of Ohio law prior to S.B. 20's enactment. Schaefer does not address the effect of S.B. 20 on the law of Ohio. See Thatcher v. Lane Constr. Co. (1970),21 Ohio App.2d 41, 47 (reported decision should not be interpreted as settling a principle not passed upon or raised at the time of adjudication).
Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281
provides further guidance concerning the applicability of R.C.3937.44 and Schaefer to this case. In Ross, the Supreme Court decided whether the law as pronounced in Savoie or the law as codified by S.B. 20, in R.C. 3937.18, applied to a case involving underinsured motorist coverage. The court held that the statutory law in effect at the time of contracting or renewal defines the scope of an automobile liability insurance policy. Id. at 287-88. In Ross, the appellants entered into their underinsured motorist insurance policies prior to S.B. 20's effective date, meaning that the former law governed their policies. The only instance in which S.B. 20 could be incorporated into a policy of insurance would be "if a new contract of insurance had been entered into or a renewal (representing a new contract of insurance) of the existing policy had occurred." Id. at 289; see, also, Benson v. Rosler
(1985), 19 Ohio St.3d 41, 44 (statutes are incorporated into any renewal of an insurance policy if the renewal represents a new contract of insurance). Thus, applying Ross to our facts, R.C. 3937.44 is the controlling law if the parties entered into the insurance policy at issue after October 20, 1994. If not,Schaefer would be the controlling law.
The declarations page of the insurance policy at issue expressly states that the "Guarantee Period" of the policy runs from August 30, 1994 until August 30, 1996. Thus, McClandish and State Farm entered into a contract of insurance prior to October 20, 1994, with guaranteed renewals until August 30, 1996. Appellants contend that Schaefer should control by virtue of the fact that the original insurance policy was entered into by McClandish and State Farm prior to October 20, 1994. We disagree with appellants because it appears from the language of the policy, including the declarations page, that the policy in effect at the time of the accident represented a new policy of insurance that was entered into after the effective date of S.B. 20, making R.C. 3937.44 applicable to this case.
Appellants are correct in observing that the "Guarantee Period" provided for guaranteed renewals of McClandish's insurance policy at certain intervals, ending on August 30, 1996. However, the declarations page also states that the "policy period" of the particular policy in effect at the time of the accident ran from January 10, 1995 until August 30, 1995. This indicates that the policy in effect at the time of the accident had been renewed and that this renewal period began on January 10, 1995. Under the conditions of renewal, the policy language specifically states:
* * * Renewal
 If this policy provides liability, medical payments, or uninsured motor vehicle coverage, we will renew such coverages for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period shown on the declarations page.
 It is agreed that the renewal premium will be based upon the rates in effect, the coverages carried, the applicable limits of liability, deductibles and other elements that affect the premium that apply at the time of renewal.
Generally, the renewal of an insurance policy represents a separate and distinct contract. 2 Russ Segalla, Couch on Insurance 3d (1997), Section 29.33. However, the determination of whether a renewal represents a new contract or merely a continuation of a prior one depends on the language of the instrument itself. Id. The language of the State Farm policy indicates that appellee and McClandish entered into a new policy of insurance that commenced on January 10, 1995. Therefore, R.C. 3937.44 was incorporated into the policy, allowing appellee to limit loss of consortium claims to the single per person policy limit applicable to the person suffering bodily injury. See Benson, supra, 19 Ohio St.3d at 44
(statutes incorporated into a renewal if renewal represents a new policy); see, also, Cartwright v. Maryland Ins. Group
(1995), 101 Ohio App.3d 439, 442 (statutory law in effect at renewal becomes part of policy as though fully written into it).
Several factors lead this court to conclude that the insurance policy involved was a new contract of insurance entered into on January 10, 1995. First, in examining the policy provisions pertaining to "when coverage applies," it appears that the end of each policy period marks the end of the insurance contract. The contract states:
When Coverage Applies
 The coverages you chose apply to accidents and losses that take place during the policy period.
 The policy period is shown under "Policy Period" on the declarations page and is for successive period of six months each for which you pay the renewal premium. * * * The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page. (Emphasis added.)
The text of this provision indicates that the insurance policy terminates upon the end of each policy period, with a new period commencing upon payment of the renewal premium. SeeBenson, supra, 19 Ohio St.3d at 44 (language of policy describing termination at end of six month period construed as creating new policy of insurance upon renewal); see, also, Couch on Insurance 3d, Section 29:33 (language providing for termination at end of policy period, as opposed to language saying that the contract "continues in force," indicates that a new contract created upon renewal). Further, the declarations page describes the "Policy Period" as running from January 10, 1995 to August 30, 1995, expressly declaring that the policy of insurance in this case was effective, as a matter of contract, for that particular period and no other. Policies written for specific periods "may be construed as term policies rather than continuing policies." Benson, 19 Ohio St.3d at 44. Thus, renewal creates a new "term policy" of insurance.
Also significant is the policy number on the insurance policy's declarations page. The policy number on appellee's policy is listed as "805 4189-B30-35A." Elsewhere on the declarations page, it is made clear that the policy bearing this number "replaced policy 8054189-35." (Emphasis added.) This language, coupled with the separate policy numbering, shows that the policy represented a new contract of insurance separate from any prior ones entered into by appellee and McClandish.
The terms contained in the "Renewal" provisions of the policy also lead to a determination that the policy was a separate and distinct contract of insurance apart from any others during the Guarantee Period. The text of the Renewal conditions establish that appellee made a contractual agreement that it "will renew such coverages for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period shown on the declarations page." This guaranteed renewable aspect of the insurance policy is mandated by statutory law contained in R.C.3937.31. Although appellants argue that this indicates a continuing contract of insurance that was entered into prior to October 20, 1994, we do not agree. The "Guarantee Period" covering renewals does not automatically declare all insurance contracts to be two-year contracts; insurance companies may still issue policies for shorter periods; these contracts are considered as term policies, rather than continuing ones.Benson, supra, 19 Ohio St.3d at 44. If we were to accept appellants' view that the Guarantee Period establishes a continuing contract, we would essentially declare that there is no difference between insurance contracts specifying a policy period of two years and contracts specifying a policy period of less than two years but guaranteed renewable. This interpretation belies the statutory language of R.C. 3937.31, which declares these two types of policies to be alternative to one another and therefore different. The former constitutes a single insurance contract while the latter, if written with the appropriate language, may represent several distinct insurance contracts, if renewed, within a two-year period.
It is also noteworthy that the policy's "Renewal" provisions provide for methods of determining the "renewal premium" that the insured would pay if he or she chose to enter into a renewal policy at the end of a particular policy period. The fact that appellee's policy listed these guidelines establishes that the appellee and the insured contemplated the possibility of differing insurance rates if the policy were renewed from one policy period to another. This re-evaluation of the terms and conditions of the renewal policy suggests that any renewal of the policy at issue represented a new contract of insurance, effective for whatever policy period stated on the declarations page.
Based on our interpretation of its terms, we conclude that the policy represented a separate and distinct contract of insurance from any others entered into between appellee and McClandish. The policy period, as indicated on the declarations page, began on January 10, 1995. This was after the effective date of S.B. 20, meaning that R.C. 3937.44 was effectively incorporated into the contract as the statutory law effective at the time of contracting. Because R.C. 3937.44 allows insurance policies to limit loss of consortium claims to a single per person limit, the trial court correctly granted summary judgment to appellee and limited the children's loss of parental consortium claims to the single per person limit applicable to Christy Francis.
 B.
Appellants' second argument in support of their first assignment of error also questions the applicability of R.C.3937.44 to this case. Appellants contend that R.C. 3937.44 is merely an "anti-stacking" statute that permits insurance companies to include policy language that prevents the "stacking" of several coverages applicable to the same accident. An "anti-stacking" provision allows an insurer to deny coverage to an insured because other coverage is available to the insured through a different insurance policy. Appellants' argument fails to appreciate the comprehensive scope of S.B. 20 in general and R.C. 3937.44 in particular. S.B. 20 did more than overrule Savoie's holding regarding anti-stacking clauses in uninsured motorist policies. S.B. 20 also overruled Savoie's prohibitions on subjecting all claims for damages arising out of one person's injury to a single per person liability limit. See Section 10, Am.Sub.S.B. No. 20. Indeed, R.C. 3937.44 specifically permits all liability insurance policies with coverage limits for bodily injury to include terms and conditions making all claims arising from one person's injury subject to a single limit of liability. Appellants' argument that R.C. 3937.44 is merely an anti-stacking statute is contrary to the statute's text and the General Assembly's enunciated legislative purpose behind S.B. 20.
Based on the foregoing, we conclude that the trial court correctly applied R.C. 3937.44 in entering summary judgment in favor of appellee. Accordingly, we overrule appellants' first assignment of error.
 II.
In their second assignment of error, Appellants challenge the constitutionality of R.C. 3937.44. Appellants argue that the operation of R.C. 3937.44 to limit the Francis children's loss of consortium claims to their mother's per person liability limit violates the Section 16, Article I of the Ohio Constitution.
Section 16, Article I of the Ohio Constitution states in pertinent part:
 All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
This constitutional provision, also known as the "Right to a Remedy" provision, prohibits the denial of a "meaningful remedy" that would leave an injured plaintiff without legal recourse. See Sorrell v. Thevenir (1994), 69 Ohio St.3d 415,426. We disagree with appellants' contention that the operation of R.C. 3937.44 unconstitutionally eliminates a meaningful remedy.
In order for R.C. 3937.44 to be unconstitutional, its operation must result in "a serious infringement of a clearly preexisting right to bring suit." Fabrey v. McDonald PoliceDept. (1994), 70 Ohio St.3d 351, 355. R.C. 3937.44 has no effect on an injured plaintiff's ability to "bring suit" for redress. The statute merely allows insurance policies to limit the scope of their coverages in a manner that restricts certain claims to the single per person policy limit applicable to the person suffering bodily injury. The statute has no effect on the availability of a cause of action for loss of parental consortium; rather, it allows an insurance company to limit the amounts recoverable from such a claim. See Scancarello v. ErieIns. Co. (July 25, 1996), Franklin App. No. 96APE02-166, unreported.
In enacting R.C. 3937.44, the General Assembly established a legislative policy that limitations in insurance policies restricting the amounts recoverable from certain claims are enforceable. While this is contrary to the Supreme Court's pronouncements in Savoie and, more recently, Schaefer, it is not unconstitutional. It is well within the purview of the legislature to exercise its policymaking authority to alter the contractual relationship embodied in future insurance policies. Any contractual rights that appellants may have had under prior law do not come within the protection of Section 16, Article I
of the Ohio Constitution. Beagle v. Walden (1997), 78 Ohio St.3d 59,64.
For these reasons, appellants' second assignment of error is overruled.
 III.
Based on the foregoing, we overrule each of appellants' assignments of error. The trial court correctly entered summary judgment in favor of appellee and, accordingly, the judgment of the Athens County Court of Common Pleas is affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Kline, P.J. and* Grey, J. For the Court Concur in Judgment 
Opinion:
 BY: _________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] R.C. 3937.44 states:
 Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury * * * sustained by one person, and, for the purpose of such policy limit shall constitute a single claim.
Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident. (Emphasis added.)
[2] If the trial court agreed that the loss of parental consortium claims were entitled to their own per person limits, appellee agreed to pay $50,000 per child for a total of $100,000. This remaining $100,000 would have exhausted appellee's $300,000 aggregate (i.e., "per accident") coverage under McClandish's insurance policy.
[3] We note that in a similar case, the Fifth District heldSchaefer inapplicable. One of the reasons the court gave for its decision was that Schaefer expressly applied to uninsured motorist claims and coverages, which have policy considerations distinct from general liability policies and coverages. Jonesv. Speelman (Aug. 31, 1998), Stark App. No. 1998CA00093, unreported. Although we also find Schaefer inapplicable, we decline to follow this distinction as part of our rationale. While the Schaefer syllabus expressly applied to uninsured motorist claims, it also expressly overruled Tomlinson v.Skolnik, supra. Tomlinson involved a general liability insurance policy and not an uninsured motorist policy. Thus,Schaefer's overruling of Tomlinson indicates that its reasoning applies equally to cases involving general liability insurance. Moreover, in the wrongful death context, the Supreme Court has indicated that it would be anomalous to apply different rules to uninsured motorist coverage as opposed to general liability coverage. See Cincinnati Ins. Co. v. Phillips (1990), 52 Ohio St.3d 162,165. If uninsured motorist coverage provided greater benefit (e.g. separate per person limits for derivative claims) than general liability provisions, it would create the anomaly that an injured party would be better off being injured by an uninsured tortfeasor than one who possessed liability insurance. Id. But, see, Burris v. Grange Ins. Co.
(1989), 46 Ohio St.3d 84, 88 (identifying differing statutory policy behind uninsured motorist coverage justifying differing treatment) (overruled in Savoie).
* Lawrence Grey is a retired judge from the Fourth District Court of Appeals, sitting by assignment.