BENSON ET AL., APPELLANTS, v. ROSLER ET AL.; FARMERS INSURANCE OF COLUMBUS, INC., APPELLEE.

[Cite as Benson v. Rosler (1985), 19 Ohio St. 3d 41.]

(No. 84-1677—Decided August 9, 1985.)

*Teodosio, Cherpas & Manos, George T. Manos* and *Thomas A. Teodosio,* for appellants.

*Arter & Hadden, Ed E. Duncan* and *Victoria L. Vance,* for appellee.

*Per Curiam.* The precise question herein is whether anti-stacking provisions contained within insurance policies obtained prior to the effective date of former R.C. 3937.181 are null and void where such policies are renewed thereafter. Stated another way, where anti-stacking provisions were contained within the original policy issued at the time this court had pronounced such provisions to be against public policy, does the later legislative enactment and renewal of the policies with the original provisions remaining revitalize and give legal force to anti-stacking? We hold that such provisions are not void, and are to be given full legal force and effect.

Appellants take the basic position that the anti-stacking language in the policies at the time they procured such policies was void as determined by this court in the *Volkmann* case, and therefore such language should not be considered as part of the policies. Appellants' argument continues to the effect that if such language was not initially contained within the policies, Farmers would, pursuant to the language of Part V — Conditions, Section 2, Changes, be obligated to issue an endorsement, or a new policy, in order to embrace the legislative pronouncement. This particular language in the policy, under Part V, Conditions, reads:

"2. Changes

"This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be effected in this policy except by endorsement or new policy issued by us. * * *"

The sequence of events here, and the law applicable thereto, will not support appellants' contention. The two policies were first obtained on May 6, 1980. At that specific time, it is true that the anti-stacking law as pronounced by this court was in effect. The General Assembly overruled *Volkmann* by enactment of R.C. 3937.181(E) which became effective June 25, 1980, some six weeks after the policies were issued. Appellants thereafter renewed both policies for subsequent six-month periods on November 6, 1980, May 6, 1981, and November 6, 1981. The accident occurred on November 13, 1981.

Statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy. 12 Appleman, Insurance Law and Practice (1981) 166, Section 7041.

The policies issued herein were written for six-month durations and were renewable for additional six-month periods at the limited option of the insuring company as provided by R.C. 3937.31. Although the statute provides that automobile insurance policies shall be issued "for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years * * *," such policies, when written for specific periods, may be considered term policies rather than continuing policies. The specific provisions in these policies relating to the term are found within the declarations:

"The policy shall expire at 12:00 o'clock noon standard time on the expiration date shown. The policy may be renewed for an additional policy term of six months each time the company offers to renew by sending a bill for the required renewal premium, and the insured pays said premium in advance of the respective renewal date. * * *"

Also, the policies expressly provided that the coverage would terminate at the expiration of the six-month period:

"Part V — CONDITIONS

"* * *

"8. Termination or Reduction of Coverage

"* * *

"c. Automatic Termination

"This policy is written for a 6 month period. * * * It will automatically terminate at the end of any one policy period for which you or your representative do not accept our offer to renew it. Your failure to pay the required renewal premium means that you have declined our offer."

We determine the language of these policies to constitute term coverage and, at the expiration of the six-month period with the company's subsequent acceptance of the premiums, there was a new contract of insurance coverage entered into by the parties. Appellants renewed the policies herein three times before the automobile accident occurred on November 13, 1981.

Having been enacted into law and effective as of the date of the renewals of these policies, R.C. 3937.181 became a part of the policies and gave lawful force to the language as contained within the original policies relative to the stacking of insurance. There was no need to issue an endorsement or new policy because, as renewed, the language of the original policy contained the entire agreement between Farmers and these insureds. As stated by the court of appeals, "[i]n our view, the policy language was already in the policy and the renewals subsequent to the effective date of the amended statute operated to bring its original terms within the favor of the amended statute."

Accordingly, we hereby affirm the judgment of the court of appeals which ruled that the policy provisions could not be stacked.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

CELEBREZZE, C.J., C. BROWN and DOUGLAS, JJ., dissent.

CELEBREZZE, C.J., dissenting. In my opinion the majority's version of the events which transpired does not reflect the true facts of the case and borders on fantasy. Because I cannot agree to such an unsupportable posture, I dissent.

In the present case, the record contains a list of interrogatories from the Bensons' counsel to the insurance company. In answer to question 4(a), Farmers admits both policies were issued May 6, 1980. Question 12 asks: "If the policies were renewed, were any changes or modifications of the original policies included in the renewal?" Answer: "None." Question No. 14: "Were any negotiations had with insured or any of his representatives prior to the issuance of any additional policy?" Answer: "No additional policies were issued subsequent to May 6, 1980." In answer to question 19, Farmers said the policies were in force "May 6, 1980, through the date of the accident."

In paragraph two of the syllabus in *Courtright* v. *Scrimger* (1924), 110 Ohio St. 547, this court held that "[w]here words used in a contract are susceptible of more than one meaning, and the signatories to the contract have by acts done in carrying out the terms thereof placed their own interpretation upon the meaning of the words, courts will adopt the interpretation which the signatories to the contract have themselves made."

We are not required to speculate in this case whether the parties considered the policies as continuing contracts or, as the majority concludes, "* * * a new contract of insurance coverage entered into by the parties" each time they were renewed. The majority found that because the Bensons continued to pay premiums on the policies that they effectively

agreed to the anti-stacking clauses by "renewal" of the insurance contracts.

Farmers, however, as previously pointed out, stated that the period during which the policy was in force was "May 6, 1980, through the date of the accident." Throughout the interrogatories the answers given by Farmers indicate that it considered the Bensons' policies as continuing contracts, and not as separate policies issuing and expiring at renewal time. The policy numbers of these contracts, for example, remained the same throughout. Moreover, Farmers consistently speaks in terms of two policies, not six, as would be the case if the original policies expired and new ones were entered into as the majority reasons. Also, as has been stated, Farmers admitted, "No additional policies were issued subsequent to May 6, 1980." Obviously, this court has failed to "* * * adopt the interpretation which the signatories to the contract have themselves made." *Courtright, supra.* See, also, *U.S. Fire Ins. Co.* v. *Phil-Mar Corp.* (1956), 166 Ohio St. 85, 87 [1 O.O.2d 212]; *Skivolocki* v. *East Ohio Gas Co.* (1974), 38 Ohio St. 2d 244 [67 O.O.2d 321], paragraph one of the syllabus.

There is, however, a more basic flaw in the majority's analysis. In this case, we deal with a decision of this court that has been legislatively "overruled." In *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58 [8 O.O.3d 70], this court invalidated "anti-stacking" clauses as being against public policy, subject to the restriction that the injured party may not " 'pyramid separate coverages so as to recover more than the actual loss.' " R.C. 3937.181(E) legislatively abrogated *Volkmann* by allowing provisions precluding stacking of policies. The statute, however, did not take effect until June 25, 1980 (see Am. Sub. H.B. No. 22); the Bensons bought their policies on May 6, 1980. Although the anti-stacking clauses were printed in the policies at the time of purchase, such clauses were void and ineffective, as if they had never been inserted, and were not a part of the contracts.

In *Nationwide Mut. Ins. Co.* v. *Marsh* (1984), 15 Ohio St. 3d 107, this court dealt with a case where an arbitration clause, referred to as "Endorsement 1604," had been inserted into a standard policy without notice to the policyholder. This court explained at 109 that "[i]t is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. * * * [Citation omitted.] Therefore, the terms of the policy must be mutually agreed-upon to be effective, in accordance with contract principles." Further, the court said:

"The fact that Endorsement 1604 is included without exception in 'full coverage' policies such as this is no substitute for consent on the part of the policyholder unless there was a 'meeting of the minds' as to its inclusion. This is basic contract law.

"It is evident from the record that Endorsement 1604 was never discussed by the parties at the time the policy was purchased. Appellants

[insurers] do not dispute this fact. Therefore, this court finds as a matter of law that Endorsement 1604 was not a part of the * * * policy." *Id.*

Since the anti-stacking provisions did not validly appear in the policies at the time of purchase, and no negotiations ever occurred between the insurer and the insured as to their inclusion, under the principles of *Marsh, supra,* no valid and enforceable anti-stacking clauses were in the policies at the time the automobile accident occurred on November 13, 1981.

The only real question arising here is whether the legislative abrogation of our decision in *Volkmann* revives a contract term of liability to pay insurance, which contract term was null and void by the express provisions of *Volkmann* when the policy was negotiated and executed. "There is, there can be, no doubt that a void contract is never revived; and, certainly, not without an express provision to that effect, which this act does not contain." *Nichols* v. *Poulson* (1834), 6 Ohio 305, at 309.

In light of the foregoing, there can be but one conclusion. The insurance contracts were continuous policies from the date they were issued. The "anti-stacking" clauses were void, unenforceable, and not a part of the contracts at the time the parties negotiated and entered the agreements. Since the disputed clauses were not a part of the agreement, subsequent legislative enactment had nothing to revive. To be binding and effective, the clauses would had to have been inserted in a new agreement following assent by both the insurer and policyholder.[1]

DOUGLAS, J., concurs in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. The policies, in effect at the time of plaintiff Marcia Benson's injuries, were entered into on May 6, 1980. Both policies between Farmers Insurance of Columbus, Inc. and the plaintiffs contained $100,000 per person to $300,000 per occurrence liability limits for uninsured/underinsured motorist protection. The appellate court acknowledges that in 1980 the anti-stacking clauses contained in the plaintiffs' policies were invalid pursuant to this court's decision in *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58 [8 O.O.3d 70]. However,

---

[1] The Bensons' policies contained the following provision: "This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be effected in this policy except by endorsement or new policy issued by us."

Under similar facts, the Court of Appeals for Medina County concluded that although anti-stacking language was in the contract at the time of the accident, pursuant to the *Volkmann* case, "the exclusion was never a part of the original contract of insurance." *Burkhart* v. *Motorists Ins. Co.* (Nov. 24, 1982), Medina App. No. 1167, unreported, at 4.

The *Burkhart* court correctly explained that "defendant [insurer] does not dispute that no endorsements were ever issued containing the exclusion subsequent to the amendment of R.C. 3937.18. In light of the contractual provision which expressly limits change in the terms of the policy except by endorsement, we must conclude that the disputed exclusionary language was not a part of the policy at the time of plaintiff's accident." *Id.* Consequently, in the Medina County case, the policyholder was properly permitted to "stack" his policies.

since the decision in *Volkmann,* which barred anti-stacking clauses in policies, the legislature has enacted R.C. 3937.181(E) [now R.C. 3937.18(G)], which legislatively overrules *Volkmann.* The statute, however, did not take effect until June 25, 1980, after the Bensons had purchased their policies, and had them issued, from Farmers on May 6, 1980. Although the policies purchased contained anti-stacking clauses, such clauses were void, as if they were never inserted, because at the time of the issuance of the policies on May 6, 1980, such anti-stacking clauses were unenforcible pursuant to *Volkmann.*

In *Nationwide Mut. Ins. Co.* v. *Marsh* (1984), 15 Ohio St. 3d 107, this court addressed the applicability of clauses added to an insured's policy without notice. The court explained at 109 that "[i]t is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. * * * Therefore, the terms of the policy must be mutually agreed-upon to be effective in accordance with contract principles." The court further concluded that "[i]t is evident from the record that Endorsement 1604 was never discussed by the parties at the time the policy was purchased. Appellants [insurers] do not dispute this fact. Therefore, this court finds as a matter of law that Endorsement 1604 was not a part of the * * * policy."

In the present case, the record contains interrogatories between the Bensons' counsel and the insurance company. In answer to questions propounded by the plaintiffs, Farmers admitted that both of the policies were issued May 6, 1980. Farmers further admitted that when the policies were renewed "[there were not] any changes or modifications of the original policies included in the renewal." Also, when asked by interrogatory question number 14, "Were any negotiations had with insured or any of his representatives prior to the issuance of any additional policy?" Farmers answered: "No additional policies were issued subsequent to May 6, 1980."

It seems evident that since the anti-stacking provisions did not validly appear in the policies at the time of their purchase, and no negotiations have ever occurred between the insurer and the insureds as to their inclusion since that time, that under the principles of *Marsh* no valid and enforcible anti-stacking clauses were a part of the policies at the time the accident occurred and, *ipso facto,* could not become part of the policies thereafter without mutual action of the parties to modify the policies. This conclusion is further supported by the terms of the policies themselves which provide that no changes may be effective "except by endorsement or new policy issue."

The next question is whether the anti-stacking provisions could have been revived by the enactment of the statute and the subsequent renewal of the policies between the insureds and insurer by the payment of premiums. In *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d

163, this court recognized that the statute authorizing anti-stacking provisions in insurance policies was valid and enforcible. *Karabin,* however, may be distinguished from the instant case. *Karabin* does not reflect when the disputed policy was issued or when it became effective. It only notes that "[b]oth policies were in effect on April 17, 1981, when Karabin was injured by an uninsured vehicle * * *." This of course was after the enactment of the statutory amendment allowing anti-stacking clauses. In the present case the facts are much more complete. Both the Bensons and Farmers Insurance entered into the contracts before the statutory amendment and are presumed to have been aware of this court's holding in *Volkmann* that anti-stacking clauses were void.

In light of the foregoing rationale it is reasonable to conclude that the insurance contracts in dispute were continuous policies from the date they were issued, May 6, 1980. The anti-stacking clauses contained in those policies when issued were void and unenforcible, and tantamount to not being a part of the contracts. For the anti-stacking clauses to become effective after the issuance of the policies such clauses had to be inserted by agreement of the insurer and the policyholders after June 25, 1980, the date of the enactment of the statutory provision permitting anti-stacking clauses in liability insurance contracts, pursuant to the terms of the policies themselves. Since no such agreement was ever negotiated or entered into between the parties, the anti-stacking provisions in the contracts were never revived. Without the revival of such anti-stacking clauses by a negotiated amendment they had no effect.

Since there are no valid anti-stacking provisions in the contract, I would reverse the court of appeals and find that the policies can be stacked to provide protection for the injured plaintiffs, subject of course to the limitation that the injured parties may not recover more than their actual loss.