OPINION
Plaintiff-appellant, Martha Jane Newkirk, Individually and as Administrator of the Estate of Michael A. Maddock, appeals a finding of summary judgment in favor of defendant-appellee, State Farm Mutual Insurance Company ("State Farm"). This case concerns the effect of Am.Sub.S.B. 20 ("S.B. 20"), which amended the uninsured/underinsured motorist statute in Ohio, R.C.3937.18, et seq., as to the legal effect of a named driver exclusion. Find ing no error in the decision of the trial court, we affirm.
On September 11, 1996, Michael A. Maddock was driving his motor vehicle, a 1985 Oldsmobile Calais. Maddock sustained fatal injuries as a result of an accident with an uninsured driver. At the time of the accident, Maddock, Newkirk's natural son, lived in Newkirk's household. The parties agreed that Maddock's death was as a result of the alleged negligence of the uninsured driver. Maddock was insured through Progressive Casualty Insurance, which paid $12,500, the limit of Maddock's uninsured motorist coverage.
Subsequently, Newkirk filed a complaint for declaratory judgment seeking uninsured motorist coverage pursuant to a State Farm policy ("Newkirk policy"), number 215 1245-C14-351, in which New kirk was insuring a 1995 Chevrolet Monte Carlo, a vehicle not involved in the accident, and any other applicable insurance policies. Newkirk's insurance coverage with State Farm began on March 14, 1992. The other automobile insurance policy in this case, number 810 8284-EO4-35, was issued to Benjamin Darrell Newkirk, Mad dock's stepfather.[0] Both contracts were renewed every six months, up to the time of the accident. Newkirk sought coverage as an heir at law under Ohio's wrongful death statute, R.C.2125.02.[1] Based on the named driver exclusion of the decedent, State Farm denied any coverage in their answer and the parties filed cross-motions for summary judgment.
The driver exclusion, as originally signed, stated as follows:
 This is to certify that I have been advised of State Farm's unwillingness to issue or continue the automobile insurance policy or policies identified above in the present form beyond the Effective Date of Agreement. If this Agreement is to apply to a current policy or policies, I request termination of the policy or policies as of the Effective Date of the Agreement and I apply for a new policy or policies to be issued on the above described automobile(s).
 I understand and agree that the new policy or policies will include the following endorsement and the endorsement is to be included in any subsequent transfer, renewal or reinstatement of such policy or policies:
 IN CONSIDERATION OF THE PREMIUM CHARGED FOR YOUR POLICY IT IS AGREED WE SHALL NOT BE LIABLE AND NO LIABILITY OR OBLIGATION OF ANY KIND SHALL ATTACH TO US FOR BODILY INJURY, LOSS OR DAMAGE UNDER ANY OF THE COVERAGES OF THE POLICY WHILE ANY MOTOR VEHICLE IS OPERATED BY *MICHAEL ALAN MADDOCK.
 The excluded driver(s) and insured(s) accept this agreement as witnessed by their signatures
Excluded driver /s/ Michael Alan Maddock
Named insured /s/ Martha J. Maddock date 4-17-93
(Emphasis in original.) The named driver exclusion of Maddock was included in the renewal of the Newkirk policy which became effective September 14, 1993 and was included in each subsequent renewal of the policy.
Based on the driver exclusion of Maddock, the trial court granted summary judgment in favor of State Farm. From that decision, Newkirk filed a timely notice of appeal and asserts two assignments of error for our review:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN OVERRULING HER MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT (T.d. 32) IN FINDING THAT A NAMED DRIVER EXCLUSION IN PLAINTIFF'S INSURANCE CONTRACT IS VALID AND NOT IN CONTRAVENTION OF O.R.C. 3937.18(A), AS AMENDED BY AM. SUB. S.B. #20 (145 OHIO LAWS, PART 1 238) (EFFECTIVE 10/20/94) (HEREINAFTER REFERRED TO AS "S.B. 20"), EVEN THOUGH THE INSURANCE CONTRACT WAS ENTERED INTO BETWEEN PLAINTIFF AND DEFENDANT PRIOR TO THE EFFECTIVE DATE OF "S.B. 20."
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF BY FINDING THAT O.R.C. 3937.18(A) AS AMENDED BY "S.B. 20" NEGATES THE HOLDING OF THE OHIO SUPREME COURT IN SEXTON, ALEXANDER AND HEINDEL. (T.d. 32).
In the first assignment of error, appellant argues that New kirk's insurance contract with State Farm was issued prior to S.B. 20's effective date of October 20, 1994, and therefore, pursuant to precedent established prior to S.B. 20, the named driver exclusion endorsement in Newkirk's policy with State Farm was void beginning at the first time the parties entered into a continuing insurance contract. State Farm insists that because the policy was renewed every six months, a new contract of insurance was entered after S.B. 20's effective date, and therefore S.B. 20 applies.
In Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,289, the Supreme Court of Ohio held that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into the contract for automobile liability insurance controls the rights and duties of the parties." The court referenced its prior decision in Benson v. Rosler (1985), 19 Ohio St.3d 41, wherein the court discussed to what extent a renewal of an automobile insurance policy represents a new contract of insurance.
In Benson, the policies "were written for six-month durations and were renewable for additional six-month periods at the limited option of the insuring company * * *." Id. at 44. Specifically, the policy stated as follows:
 The policy shall expire at 12:00 o'clock noon standard time on the expiration date shown. The policy may be renewed for an additional policy term of six months each time the company offers to renew by sending a bill for the required renewal premium, and the insured pays said premium in advance of the respective renewal date.
The contract also "expressly provided that the coverage would terminate at the expiration of the six-month period[.]" Id. Thus, the court concluded that the policy was for a six-month term, as opposed to a continuing policy, and therefore each renewal after six months constituted a new contract of insurance. Id. at 45. The court noted that the accident was within the two year statutory guaranteed period for providing automobile insurance to an insured. See R.C. 3937.31(A) (every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years). However, the court found this fact was not dispositive of whether a renewal constitutes a new term contract of insurance. Id. at 44.
Nevertheless, some appellate courts have focused on whether a contract renewal was within the two-year statutory guaranteed period to determine if a renewal constitutes a new contract of insurance. For example, in Holcomb v. State Farm Ins. Cos. (Dec. 24, 1998), Franklin App. No. 98AP-353, unreported, at 11, the court found that each six-month renewal of an automobile insurance policy constituted a new contract of insurance. Under the policy, State Farm had the option not to renew the policy after a two-year guaranteed period of uninsured/underinsured motorist coverage had passed. The decision relied on Wolfe v. Wolfe (Nov. 6, 1998), Montgomery App. No. 17111, unreported, discretionary appeal allowed (1999), 85 Ohio St.3d 1446, which similarly held that, after the two-year guaranteed period, "the continuation of the policy was expressly subject to the insurance company's consent and to the payment of premiums determined by the insurance company at that time * * *." Id. at 8. In Townsend v. State Farm Mut.Automobile Ins. Co. (Aug. 14, 1998), Sandusky App. No. S-97-059, unreported, discretionary appeal not allowed, 84 Ohio St.3d 1450, the court, despite subsequent renewals of the policy, found a continuing con tract of insurance within the two-year guaranteeperiod. See, also, Hillyer v. Great Am. Ins. Co. (1999), 85 Ohio St.3d 410,412 (Lundberg Stratton, J., dissenting).
In the recent Fourth Appellate District case of Francis v.McClandish (Apr. 19, 1999), Athens App. No. 98CA21, unreported, the court addressed the same State Farm contract language involved in the case sub judice. The only material difference is that theFrancis case does not mention a Certificate of Guaranteed Renewal endorsement.[2] Before discussing the import of this difference, we review the reasons the Francis court provided for concluding the renewal at issue constituted a new contract for insurance. The court noted the following language in the contract:
When Coverage Applies
 The coverages is shown under "Policy Period" on the declarations page and is for successive period of six months each for which you pay the renewal premium. * * * The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page. (Emphasis added.)
 Id. at 22-23. This same language appears in the Newkirk policy.
Based upon the policy language quoted above, the Francis
court reached the following conclusion:
 The text of this provision indicates that the insurance policy terminates upon the end of each policy period, with a new period commencing upon payment of the renewal premium. Further, the declarations page describes the "Policy Period" as running from January 10, 1995 to August 30, 1995, expressly declaring that the policy of insurance in this case was effective, as a matter of contract, for that particular time and no other. Policies written for specific periods "may be construed as term policies rather than continuing policies." Thus, renew al creates a new "term policy" of insurance. (citations omitted).
 Id.
Next, the Francis court noted the policy number changed from "805 4189-B30-35" to "8054189-35A." In this case, the policy number at the time of the accident was 215 1245-C14-35I. According to the affidavit of Robert Kaiser, claim specialist with State Farm, the letter "I", as the ninth letter in the alphabet represents the ninth change in the contract. The record shows that some of these changes were issued after the effective date of S.B. 20.
The contract in Francis provided that State Farm "will renew such coverages for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period shown on the declarations page." Id. at 23-24. However, the court reasoned that "[t]he `Guarantee Period' covering renewals does not automatically declare all insurance contracts to be two-year contracts; insurance companies may still issues policies for shorter periods; these con tracts are considered term policies, rather than continuing ones." Id. at 24, citing Benson,19 Ohio St. 3d at 44. The opinion continued: "If we were to accept appellant's view that the Guarantee Period establishes a continuing contract, we would essentially declare that there is no difference between insurance contracts specifying a policy period of two years and contracts specifying a policy period of less than two years but guaranteed renewable." Id.
The Newkirk policy has the same coverage language and similar policy numbering as the State Farm contract in Francis and we agree with the court's analysis of the policy. However, we must address to what extent the "Certificate of Guaranteed Renewal" changes the analysis in this case. The endorsement provides, except under defined circumstances, the contract of insurance will not be can celled or "non-renewed." Nevertheless, this endorsement does not change the contract coverage language which defines each renewal in terms of a separate term contract. The fact that the contract can only be "non-renewed" under certain circumstances does not imply each renewal represents continuation of the original policy. The reasoning of Francis that a statutory "Guarantee Period" does not establish a continuing contract would logically apply whether the guarantee is statutorily required by R.C. 3937.31 or provided in a contractual endorsement.
The driver exclusion was first included in the renewal of September 14, 1993, before the effective date of S.B. 20. However, Newkirk continued to renew the policy after the S.B. 20 changes went into effect. The policy was changed after the effective date of S.B. 20, changing the terms of the contract for insurance. Due to the fact the contractual language defines each six-month renewal as a new "term" contract of insurance and contains endorsement changes after S.B. 20, we find that the renewals after S.B. 20 each constituted new contracts of insurance. Therefore, R.C. 3937.18, as currently enacted (i.e., with the S.B. 20 amendments), applies to the insurance contract at issue. The first assignment of error is overruled.
We now turn to the effect of S.B. 20 on the legal effect of the driver exclusion of the decedent, Michael Maddock. In the second assignment of error, appellant argues that S.B. 20 does not overrule the Supreme Court of Ohio's decisions in Sexton v. StateFarm Mutl. Automobile Ins. Co (1982), 69 Ohio St.2d 431, and StateFarm Auto. Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397, and the named driver exclusion of Maddock is void.
In Sexton, a seventeen-year-old child was killed as a passenger in a vehicle where the driver was uninsured and at fault. The parents of the deceased were divorced and the child had lived with her mother. The father paid certain expenses as a result of the accident and proceeded to file a claim under his automobile insurance policy with State Farm. State Farm denied the claim because the decedent was not an "insured," and thus not included under the father's policy. The court concluded that the policy definition of an "insured" was void because it was contrary to the provisions of R.C. 3937.18, which provided that a policy cannot deny a claim in which the insured would legally be entitled to recover damages. Since the father, as a named insured, would have a wrongful death action pursuant to Chapter 2125 of the Ohio Revised Code, the policy definition of an "insured" was found to be void.
In Alexander, Alexander was a passenger in his vehicle which was driven by another driver. In a one car accident, Alexander was injured and the driver was killed. The driver's insurance company paid the limits of his insurance policy to Alexander. Alexander then asserted a claim under his underinsured motorist policy. State Farm denied the claim under the "household exclusion," which effectively denied an insured from receiving underinsured motorist protection when the tortfeasor which caused the accident was driving the insured's vehicle. The court concluded the exclusion was invalid because "[a]n automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law." Id. at syllabus.
In Heindel v. Luke (Apr. 22, 1996), Brown App. No. CA95-12-025, unreported, this court addressed the validity of a driver exclusion. Shawn Heindel, who resided with his mother, was injured in a vehicle driven by a third party. Shawn proceeded to file a claim with his mother's automobile insurance policy for uninsured motorist coverage. The insurance company denied the claim pursuant to a driver exclusion. In our opinion, we found that the particular exclusion did not comply with the Supreme Court of Ohio's decision in Alexander.
The question before this court is whether the S.B. 20 amendments to the uninsured/underinsured motorist statute, R.C. 3937.18, supersede the Supreme Court of Ohio's holdings in Sexton
and Alexander, at least as applied to the exclusion in this case.
R.C. 3937.18(A)(1) and (2) was changed by S.B. 20 as follows:
 No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following COVERAGES are provided TO PER SONS INSURED UNDER THE POLICY FOR LOSS DUE TO BODILY INJURY OR DEATH SUFFERED BY SUCH PER SONS:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, SUFFERED BY ANY PERSON INSURED UNDER THE POLICY.
 (2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, SUFFERED BY ANY PERSON INSURED UNDER THE POLICY * * *. (Additions to statute in boldface; Deletions in strikeout.)
A plain reading of the statutory changes to R.C.3937.18(A)(1) and (2) indicate that uninsured motorist coverage can be limited to those "insured under the policy." The import of these changes is discussed in the Eighth Appellate District decision of Kocel v. Farmers Insurance of Columbus, Inc. (Mar. 7, 1996), Cuyahoga App. No. 69058, unreported, discretionary appeal allowed, 76 Ohio St.3d 1495, appeal dismissed as improvidently granted (1997), 79 Ohio St.3d 1235. In Kocel, the appellant's brother was killed in an automobile accident by an uninsured tortfeasor. The appellant filed an uninsured motorist claim through his automobile insurance policy with Farmers. Farmers denied coverage because the bodily injury was not to an "insured person" under the policy. The appellant argued in response that he was an "insured" entitled to derivative damages under the wrongful death statute, R.C. 2125.02. The appellant argued the exclusion of coverage therefore violated R.C. 3937.18.
The Kocel court concluded "that an insurance policy exclusion which limits uninsured/underinsured motorist coverage to bodily injury or death sustained by an insured does not violate R.C.3937.18(A)." Id. at 10. The decision reasoned that "the legislature clarified that R.C. 3937.18 was meant to provide persons insured under the policy for loss due to bodily injury suffered by such person." Id. at 8. The court noted that the decision was consistent with the rule enunciated in Martin v. Midwestern GroupIns. Co. (1994), 70 Ohio St.3d 478, that "the validity of an insurance policy exclusion depends on whether it conforms to R.C.3937.18."
Similarly, in the recent decision of King v. Western ReserveMutual Cas. Co. (Mar. 15, 1999), Monroe App. Nos. 805, 806 and 807, unreported, the Seventh Appellate District held "that under R.C. 3937.18, as amended by Senate Bill 20, an insurance policy exclusion that limits underinsured motorist coverage to bodily harm or death sustained by an insured is valid." Id. at 11.
We agree with the reasoning of our sister districts. Further, the case sub judice represents an even stronger case for upholding the validity of the exclusion of the decedent. For example, in Kocel, the parties were disputing standard boilerplate-type language in the insurance contract limiting coverage to an "insured." In this case, Newkirk's policy excluded coverage from any "bodily injury, loss or damage" when Michael Maddock was operating any vehicle. This exclusion was unambiguous and unequivocal. Newkirk cannot recover damages as an "heir at law" because the endorsement excludes coverage for any damages as a result of Michael Maddock operating any vehicle. We conclude that this exclusion does not violate R.C. 3937.18, as amended by S.B. 20. Thus, Sexton and Alexander no longer prohibit the driver exclusion in this case.
We recognize that the legislative history, which appears following the revised statute, only gives specific reference to the intent of the legislature to overrule the decision of Savoie v.Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, which concerned the discrete issue of "stacking" uninsured/underinsured motorist cover age. However, in reviewing a statute, we first look to the plain meaning of the language the legislature has enacted. The language of R.C. 3937.18(A)(1) and (2) requires uninsured/underinsured motorist coverage to be offered for bodily injury only to those "insured" under the policy. Since the policy at issue excluded coverage for any damages as the result of Michael Maddock driving any vehicle, the trial court properly awarded summary judgment to appellee. Thus, the second assignment of error is overruled.
Judgment affirmed.
YOUNG and WALSH, JJ., concur.
[0] On both of these policies, Maddock was listed as an excluded driver. However, on the Benjamin Darrell Newkirk policy, the exclusion was first issued after the effective date of S.B. 20. Therefore, the issue in the first assignment of error, to what extent a renewal constitutes a new contract of insurance, is not at issue with respect to this policy.
[1] R.C. 2125.02(A)(1) states that "[e]xcept as provided in this division, an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent * * *."
[2] The endorsement in Newkirk's policy provides that State Farm will not cancel or non-renew this policy as long as
1. this policy insures a private passenger car;
2. premiums are paid when due;
 3. all drivers of your car maintain valid drivers licenses;
 4. you continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and
 5. no person other than the current named insured or that person's spouse becomes a named insured on this policy.
 You will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company. Coverage will be provided by our car policy, including any revisions that may be made to it.