Under Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, it is undisputed that the statutory law in effect at the time of entering a contract or in effect at the time of the latest renewal of the contract controls, if the renewal amounts to anew contract. See id. at 289. Likewise, in Bensonv. Rosler (1985), 19 Ohio St.3d 41, the Supreme Court held that statutes which are "enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a newcontract of insurance * * *." Id. at 44. It is important to note that nowhere did Benson or Ross hold, as today's majority opinion seems to indicate, that renewals must be considered new contracts. Instead, the court in Benson andRoss merely stated that renewals may be new contracts.
The record shows that the parties' original contract was entered on September 10, 1993. State Farm was obligated to maintain coverage for two years, until September 10, 1995, pursuant to R.C. 3937.31(A).[2] The policy language itself provided that "we will renew such coverages for a sufficient number of policy periods to provide coverage during the two-year Guarantee Period shown on the declarations page." Construing the very same State Farm contract language, the Sixth District Court of Appeals held: "[T]he language of the policy establishes that the renewals constitute one continuing contract for insurance during the two-year guarantee period." Townsend v. State FarmMut. Auto. Ins. Co. (Aug. 14, 1998), 1998 Ohio App. LEXIS 3687, unreported, at *12. See, also, Wodrich v. Farmers Ins., Inc. (May 21, 1999), Greene App. No. 98 CA 103, unreported (finding that under R.C. 3937.31 policies should be construed as continuing contracts during the two-year period).
I agree with the Townsend court in finding that this policy was one continuing contract during the two-year guarantee period from September 10, 1993 to September 10, 1995. Therefore, the only issue to resolve is whether the renewal, which took place on September 10, 1995, amounted to a "new contract" as contemplated in Benson and Ross.
The record reveals that the only difference between the insurance policy prior to September 10, 1995 and the policy after September 10, 1995 was fact that the policy number on the declarations page of the former was "211 3022-C10-35B" and the policy number for the latter was "211 3022-35A." Other than this nominal change, there appear to be no substantive changes to any term within the contract itself.
Defining "renewal," Black's Law Dictionary states in part: "To grant or obtain extension of; to continue in force for a fresh period * * *." Black's further states that an obligation is renewed when "the same obligation is carried forward by the new paper or undertaking; whatever it may be." Black's Law Dictionary (6 Ed.Rev. 1997) 1296. The plain meaning of the term indicates that a "renewal" is merely the extension or continuation of an existing contract. Based upon the plain meaning of the term, the "renewal" of an existing contract is not the equivalent to a situation where parties have mutually agreed to enter a new contract. Clearly, there was no change to the insurance contract, nor was there any negotiation between the parties establishing that the September 10, 1995 renewal constituted a new contract.
I believe that the better view was enunciated by Justice Brown's dissent in Benson where he stated: "It is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. * * * Therefore, the terms of the policy must be mutually agreed upon to be effective in accordance with contract principles." Benson at 48 (Brown, J., dissenting), quoting Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107. As further stated by Justice Brown:
 [I]t is reasonable to conclude that the insurance contracts in dispute were continuous policies from the date they were issued * * *. The anti-stacking clauses contained in those policies when issued were void and unenforceable, and tantamount to not being a part of the contracts. For the anti-stacking clauses to become effective after the issuance of the policies such clauses had to be inserted by agreement of the insurer and the policyholders after * * * the date of the enactment of the statutory provision permitting anti-stacking clauses * * *. Since no such agreement was ever negotiated or entered into between the parties, the anti-stacking provisions in the contracts were never revived.
Benson at 49 (Brown, J., dissenting).
The contract at issue here was entered September 10, 1993, prior to the effective date of S.B. 20. Under the law in existence at that time, the language in State Farm's contract was void as against public policy. Since there were no subsequent negotiations between these parties to the contrary, I would find that this contract must be construed according to R.C. 3937.18 as enunciated by Savoie, 67 Ohio St.3d 500.
Accordingly, I would reverse the trial court's decision on appellant's first two issues for review regarding the policy language and State Farm's right to set off. I would remand those two issues for a decision in favor of appellants as required under the Supreme Court's holding in Savoie.
[2] R.C. 3937.31(A) states in part: "Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years."