OPINION
Plaintiff-appellant, Katherine A. Davis, appeals from the November 27, 2000 judgment of the Franklin County Court of Common Pleas denying her motion for partial summary judgment and granting a motion for summary judgment filed by defendant-appellee, State Farm Fire and Casualty Company. The judgment was in accordance with a decision by the trial court dated November 9, 2000.
Appellant is the mother of John Davis, deceased, who was seriously injured in an automobile accident caused by the negligence of another driver on August 16, 1996. Following an extended hospitalization, John Davis died on April 12, 1999, at forty-five years of age. His wife, three minor sons, an adult daughter, a brother and his mother survive.
Prior to his death, John Davis, through court-appointed guardians, his wife, and his children reached an agreement with the negligent driver and that party's liability insurer to settle their personal injury and related claims against the tortfeasor. Metropolitan Property and Casualty Company was the other driver's insurer at the time of the accident. The limits of liability coverage provided by the Metropolitan policy were $100,000 per person and $300,000 per occurrence. A total settlement amount equaling the per person limit was approved in the guardianship proceeding by the Union County Probate Court on April 27, 1998, and was paid out to the decedent's children on June 9, 1998. The guardians signed a release on behalf of Mr. Davis, as did his wife, on her own behalf and that of the minor children. The adult daughter also executed the release. The release preserved future claims that might arise against any underinsured motorist insurance carrier. According to the probate court entry, appellee did not object to the settlement and distribution. Appellant, not a party to the settlement, received none of the proceeds.
Following her son's death, appellant sought underinsured motorist benefits under a policy of homeowner's insurance issued to her by appellee. She filed a declaratory judgment action in the Franklin County Court of Common Pleas on September 1, 1999, asking the court to determine the amount of underinsured coverage, if any, available to her under the homeowner's policy. Appellant also sought damages related to the wrongful death of her son. Pursuant to the provisions of Ohio's wrongful death statute, R.C. 2125.02, the parents of a decedent "are rebuttably presumed to have suffered damages by reason of the wrongful death."
The liability coverages, exclusions and exceptions to the exclusions contained in the policy of homeowner's insurance at issue are as follows:
SECTION II — LIABILITY COVERAGES
COVERAGE L PERSONAL LIABILITY
* * *
COVERAGE M MEDICAL PAYMENTS TO OTHERS
* * *
SECTION II EXCLUSIONS
1. Coverage L and Coverage M do not apply to:
* * *
 e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:
* * *
 (2) a motor vehicle owned or operated by or rented or loaned to any insured; or
* * *
 This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured. * * *
The parties filed cross-motions for summary judgment as to the scope of underinsured motorist coverage, if any, under the policy. They specifically argued and briefed their respective positions concerning interpretation of the exclusions contained in the policy and of the exceptions to those exclusions in determining if the policy provides motor vehicle liability coverage within the meaning of R.C. 3837.18, and, thereby, affords appellant a claim for underinsured motorist benefits. In this regard, appellant urged that application of R.C.3937.18, as in effect from October 20, 1994 through September 2, 1997, requires a finding that she is entitled to underinsured coverage as a matter of law. On the other hand, appellee offered that R.C. 3937.18, as in effect after September 3, 1997, is the applicable version of the statute and is more restrictive, thus requiring a finding of no such coverage. The parties also addressed the application of R.C.3937.18-(A)(2) in determining if a claimant is underinsured and, if so, in calculating set-offs provided for in that section. Appellant contended that the phrase "amounts available for payment" requires a comparison of benefits actually received by the claimant under the primary liability policy with the limits of the underinsured coverage potentially available. Appellee asserted that a limits-to-limits comparison is appropriate instead.
On November 9, 2000, the trial court rendered its decision denying appellant's motion for partial summary judgment and granting the motion for summary judgment by appellee. The court agreed with the position of appellee that the more restrictive version of R.C. 3937.18, effective after September 3, 1997, applies in this case so as to defeat the assertion by appellant that she is entitled to underinsured motorist coverage. In reaching its conclusion, the trial court acknowledged its awareness that this court of appeals "has found uninsured motorist coverage in homeowners insurance policies" and that similar issues "will be reviewed in the near future by the Ohio Supreme Court." The trial court also declined to address the "limits-to-limits" issue raised by the parties in their briefs. The trial court's decision was journalized on November 7, 2000. Because no unresolved claims remained pending, the court deemed its judgment a final order.
Appellant appeals from that judgment and presents a single assignment of error, as follows:
 The trial court erred by finding that Plaintiff-Appellant is not entitled to underinsured motorist coverage.
The two primary issues argued in the cross-motions for summary judgment are now presented for our review. The first is whether the insurance policy issued by appellee provides a limited form of motor vehicle liability coverage and is, therefore, subject to the mandatory off-set of uninsured and underinsured coverages required by R.C. 3937.18. The second is the "limits-to-limits" issue; that is, whether a court, in determining if a motorist is underinsured within the meaning of R.C.3937.18(A)(2), must compare the amount actually paid to a wrongful death beneficiary by a tortfeasor's liability insurance policy with the limits of underinsured motorist coverage, rather than compare the limits of the respective policies.
When an appellate court reviews a case that was concluded at the trial level by summary judgment, it does so de novo, applying the same standards as required of the trial court. Ryberg v. Allstate Ins. Co. (July 12, 2001), Franklin App. No. 00AP-1243, unreported, citing Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is appropriate pursuant to Civ.R. 56 where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, a conclusion adverse to the non-moving party. Id., citing Tokles Son, Inc. v. Midwestern Indemn. Co. (1992),65 Ohio St.3d 621, 629. The moving party must demonstrate the absence of a genuine issue of material fact concerning an essential element of the non-moving party's case. Christensen v. Ohio Mulch Supply, Inc. (Aug. 14, 2001), Franklin App. No. 00AP-1036, unreported. In this appeal, the issues presented are primarily questions of law, although some factual determinations are necessary in relation to the application of the appropriate version of R.C. 3937.18.
The area of uninsured/underinsured motorist law has undergone rapid[1]
transformation in recent years and has spawned frequent changes not only in the treatment of the subject by the legislature, but, also, in the interpretation of the statutes by the courts. The Second District Court of Appeals recently observed:
 * * * [W]e note that a great deal of confusion and uncertainty exists in the area of uninsured/underinsured motorist law, due to the many legislative changes and conflicting court decisions. * * *
 * * * Hopefully, some clarity will eventually be brought to this complex * * * area of the law. [Butler-Peak v. Cunningham (2000), 138 Ohio App.3d 334, 342.]
We will address the stated issues for review in reverse order. Our decision on the "limits-to-limits" issue requires interpretation of the phrase "amounts available for payment" as contained in R.C. 3937.18(A)(2). That subsection of the statute defines the extent of underinsured motorist coverage that must be included in all automobile liability or motor vehicle liability policies of insurance, as follows:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. * * * [R.C. 3937.18(A)(2).[2]]
Shortly before oral argument in this case, the Ohio Supreme Court expressly rejected a strict "limits-to-limits" comparison approach in Clark v. Scarpelli (2001), 91 Ohio St.3d 271 . The court held:
 For the purpose of setoff, the "amounts available for payment" language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier). [Id., syllabus.]
Following and explaining its Clark decision in Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, syllabus, the Ohio Supreme Court stated, "a strict policy-limits-to-limits comparison is untenable." Id. at 432. We apply the Clark and Littrell decisions to the circumstances of this case and hold that, if the policy of homeowner's insurance issued to appellant by appellee provides incidental motor vehicle coverage sufficient to trigger a mandatory offering of underinsured motorist coverage under R.C. 3937.18, then appellant has a potential claim against appellee under the policy in an amount up to the limits provided therein.
We next consider whether or not appellant's policy of homeowner's insurance provides incidental motor vehicle coverage that is sufficient to bring the policy within the scope of R.C. 3937.18. The language of R.C. 3937.18(A) mandates the offering of uninsured and underinsured motorist coverage in connection with the issuance of motor vehicle liability policies. As in effect from October 20, 1994 through September 2, 1997, that section provided, in part:
 No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
(1) Uninsured motorist coverage * * *.
(2) Underinsured motorist coverage * * *.
The version of R.C. 3937.18(A), in effect after September 3, 1997, is the same except for the substitution of "insured" for "persons" preceding the colon at the end of the first full paragraph. However, the later version contains several new sub-sections, including:
 (L) As used in this section, "automobile liability or motor vehicle liability policy of insurance" means either of the following:
 (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
(2) Any umbrella liability policy of insurance.
This court recently construed a policy of homeowner's insurance with coverages, exclusions and exceptions to the exclusions virtually the same as those in appellant's policy to be one that does include such incidental motor vehicle coverage within the meaning of R.C. 3937.18. Lemm v. The Hartford (Oct. 4, 2001), Franklin App. No. 01AP-251, unreported; certified as in conflict with Davis v. Shelby Ins. Co. (June 14, 2001), Cuyahoga App. No. 78610, unreported.[3]
In Lemm, we found that the rule of law pronounced by the Ohio Supreme Court's decision in Davidson v. Motorists Mutual Ins. Co. (2001),91 Ohio St.3d 262, is no more broad than is expressly stated in the syllabus, as follows:
 A homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage.
The Ohio Supreme Court declined to consider the same "residence employee" exception to the exclusion from liability coverage that has been raised in this case as the basis for extending underinsured motorist protection to appellant. Id., fn. 2. In Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541, the Supreme Court held that the nature of the policy is determined by the type of coverage it provides, not by the label affixed by the insurer. Id. at 546. Even incidental coverage of a motor vehicle is sufficient to bring an insurance policy within the scope of R.C. 3937.18. Id. at 544.
In finding that the insurance policy construed in Lemm provided some incidental coverage for damages resulting from a motor vehicle accident involving residence employees arising out of and in the course their employment with the insured, Lemm, supra, at 6, this court reasoned that the Supreme Court in Davidson reaffirmed its holding in Selander by focusing on the distinction between the respective coverages provided by the policies at issue in those cases. Id. at 7-8. We concluded that, because the policy at issue in Lemm provided express liability coverage for damages that may arise from a motor vehicle accident when the injured party is the homeowner's residence employee and the injury occurs in the course of that employment, the subject homeowner's policy is a motor vehicle liability policy subject to the requirement of former R.C. 3937.18
to offer uninsured and underinsured motorist coverage. Id. at 9. We find no meaningful difference between the homeowner's policy in Lemm, supra, and the one owned by appellant herein.
In this case, the policy of homeowner's insurance issued by appellee to appellant also qualifies as a motor vehicle liability policy for R.C.3937.18 purposes and extends underinsured motorist coverage to appellant as a matter of law unless: (1) the enactment of R.C. 3937.18(L), effective September 3, 1997, applies; and (2) when applied, the new sub-section requires a differing conclusion. Because of the dates of the issuance of the homeowner's policies construed in Davidson and the date of the accident that gave rise to the claims in that case, the Supreme Court interpreted only the version of R.C. 3937.18 that was in effect from October 20, 1994 through September 2, 1997, inclusive. Id., fn. 3. Similarly, our application of R.C. 3937.18 in Lemm, supra, did not require consideration of the version of that statute in effect on and after September 3, 1997.
"[F]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 289; see, also, Ryberg, supra, at 6-7, and Maric v. Adams (Mar. 31, 2000), Lake App. No. 98-L-142, unreported, affirmed (2001), 92 Ohio St.3d 209.
In Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, the Ohio Supreme Court discussed the "clear" public policy of this state "to ensure that all motorists maintain some form of liability coverage" and identified R.C.3937.31(A) as having been enacted to further that policy and "to protect the public from the dangers that uninsured motorists impose." Id. at 250, quoting DeBose v Travelers Ins. Co. (1983), 6 Ohio St.3d 65, 67. The same policy considerations apply to underinsured. Consistent with its previous decision in Ross, supra, and relating the mandate of R.C.3937.18, that uninsured and underinsured motorist coverage shall be offered in every motor vehicle policy issued in Ohio, to the operation of R.C. 3937.30, et seq., the Supreme Court held in Wolfe, as follows:
 * * * [P]ursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. * * *
 * * * [T]he commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. * * *
 * * * [T]he guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage. Rather, the statute applies to every new automobile insurance policy issued, regardless of the number of times the parties previously have contracted for motor vehicle insurance coverage. [Id. at 250.]
The Supreme Court applied its ruling by determining the original issuance date, December 12, 1983, of the policy under consideration in Wolfe, then counting forward in successive two-year policy periods from that date to arrive at the commencing date of the last guaranteed policy period prior to an amendment of R.C. 3937.18, effective October 20, 1994. Id. at 250. Since the effective date of the statutory amendment was fourteen months before the end of that last guaranteed policy period, the Supreme Court concluded:
 * * * Therefore, those provisions of the statute intended to supersede our decision in Savoie [v. Grange Mut. Ins. Co. (1993)], 67 Ohio St.3d 500 * * *, could not have been incorporated into the contract of insurance until the mandatory policy period had expired on December 12, 1995 and a new guarantee period had begun. [Wolfe, supra, at 250-251.]
The record in this case lacks adequate documentation to allow us to undertake the Wolfe-type computation of the commencing date of the last guaranteed policy period prior to the amendment of R.C. 3937.18, effective September 3, 1997. The record herein does not reveal any indication as to the original issuance date of the homeowner's policy to appellant by appellee. The policy of homeowner's insurance subject of this case was written for one-year terms, according to the information on the declaration pages of the exhibits made part of the trial court record by both parties. Appellant attached a copy of a policy, effective from May 30, 1997 to May 30, 1998, to its complaint. Appellee furnished a certified copy of a similar policy, effective from May 30, 1998 to May 30, 1999, in support of its motion for summary judgment. It is unclear whether the May 30, 1997 issuance of the policy was an original one or simply the renewal of a policy issued at an earlier time.[4] The declaration page does note, however, that a renewal discount for "6+ years" was taken into account in computing the premium. A similar uncertainty pertains to the May 30, 1998 policy declaration. That declaration page expressly provides for future automatic annual renewals and, similar to the previous edition, notes that a renewal discount for "9+ years" was applied in establishing the premium for the period of the renewal.
Even though the stated effective dates in both editions of appellant's homeowner's insurance are one-year terms, the Ohio Supreme Court in Wolfe, supra, limited its previous holding in Benson v. Rosler (1985),19 Ohio St.3d 41, to the extent the decision conflicts with R.C.3937.31(A). Wolfe, supra, at 251-252. The majority opinion, in Benson, had included language that suggested that policy renewals for successive six-month terms represented new contracts of insurance separate from the initial policy. Id. at 251. The Wolfe majority rejected that interpretation, as did this court in Ryberg, supra, at 6-7.
In light of the case law discussed, the date of the original issuance of homeowner's insurance to appellant by appellee is a material fact that is an essential element in this case. See Chavis v. Tanner (Apr. 20, 2000), Ross App. No. 99CA2526, unreported (remand for production of originally issued policy to determine breadth of coverage at the time of the accident); following Arnold v. Ratcliff (Oct. 26, 1998), Ross App. No. 98CA2408, unreported (remand for proof of original effective date of policy). Without the original effective date of the policy, we are unable to analyze, consistent with Wolfe, supra, whether a two-year policy guarantee period applies. See Wodrich v. Farmers Ins. of Columbus, Inc. (May 21, 1999), Greene App. No. 98 CA 103, unreported (remand for similar determination of effective date of policy and analysis under Benson, supra). Without the ability to determine that threshold issue, we cannot correctly decide which version of R.C. 3937.18 to apply.
The absence of a factual basis for applying the version of R.C. 3937.18
in effect after September 3, 1997, renders unnecessary, at this juncture, any attempt to interpret either the language R.C. 3937.18(L) or the impact of the amendment that added that sub-section. We do observe, nonetheless, that the liability coverage, under the policy at issue herein, extended to appellant in the event of bodily injury to a residence employee serves as proof that appellant is able to respond in damages for liability on account of such bodily injury to the residence employee as may arise out of the ownership, maintenance, use, loading or unloading of a motor vehicle owned or operated by or rented or loaned to appellant as the insured. See Jump v. Nationwide Mut. Ins. Co. (Nov. 2, 2001), Montgomery App. No. 18880, unreported.
The court in Jump found that the employer's automobile liability policy therein provided employees with proof of financial responsibility, as defined in R.C. 4509.01(K). Id. That aspect of the court's interpretation of R.C. 3937.18(L) is a reasonable construction of the language "proof of financial responsibility * * * as * * * defined by division (K) of section 4509.01 of the Revised Code." R.C. 3937.18(L)(1). The commercial policy in the Jump case provided coverage only with respect to unspecified "hired" or "non-owned" vehicles. The court relied upon the language in the second part of R.C. 3937.18(L)(1), "for owners and operators of the motor vehicles specifically identified in the policy of insurance" in deciding not to extend underinsured motorist coverage to an employee who was injured in a pedestrian accident outside the scope of his employment and not involving any of his employer's vehicles or vehicles leased by the employer. Id. at 8. In this case, by contrast, the policy specifically identifies motor vehicles owned or operated by or rented or loaned to appellant as being covered under the exception to the exclusion applying to residence employees. We do not believe, by using the word "specified," that the legislature intended to require makes, models and serial numbers. See Smith v. Cincinnati Ins. Co. (May 24, 2001), Lake C.C.P. Case No. 00CV000916, unreported.
The uncertainty surrounding the date of the original issuance of homeowner's insurance to appellant by appellee presents a genuine issue of material fact that remains to be litigated. Accordingly, the trial court erred in granting summary judgment in favor of appellee. This case must be remanded to the trial court for determination of that genuine issue of material fact and for the trial court's additional consideration and application of the principles discussed herein.
Appellant's single assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
LAZARUS and BROWN, JJ., concur.
[1] Since the filing of their respective appellate briefs, the parties hereto have presented fourteen recently decided cases from courts throughout Ohio, including the Ohio Supreme Court, as supplemental authority for this court's consideration in deciding this case.
[2] We do not view the amendment of this specific provision, effective September 3, 1997, substituting "insureds thereunder" for "an insured" to be a substantive change for the purpose of our analysis herein. See Clark v. Scarpelli (2001), 91 Ohio St.3d 271, fn. 2.
[3] The Ohio Supreme Court has confirmed that a conflict does exist and has accordingly directed the parties to brief the following issue:
 "When a homeowner's insurance policy provides express liability for damages arising from a motor vehicle accident when the injured party is the homeowner's residence employee and the injury occurred in the course of that employment, is the policy deemed an automobile liability or motor vehicle policy subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage?" Lemm v. The Hartford (Nov. 7, 2001), Ohio S.Ct. No. 01-1786, unreported.
[4] Appellant stated in its memorandum in support of its motion for partial summary judgment that she was insured by appellee at the time of the accident in August 1996 (Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, June 7, 2000, p. 3). Appellee did not dispute the statement, but instead argued that the last-renewed edition of the policy, effective May 30, 1998 and in force on the date of John Davis' death, is the version that requires the conclusion that R.C.3937.18, as amended effective September 3, 1997, is the statute that must be applied in deciding this case (Brief in Support of State Farm's Motion for Summary Judgment, June 7, 2000, pp. 3 and 5).